CRUZ v CHEVROLET GREY IRON DIVISION OF GENERAL
MOTORS CORPORATION

Docket No. 56032. Argued May 8, 1975 (Calendar No. 11).—Decided
December 7, 1976. Rehearing denied 399 Mich 1041.

Victoriano Cruz was awarded workmen's compensation benefits
against defendant Chevrolet Grey Iron Division of General
Motors Corporation with reduced benefits pursuant to the
section of the Workmen's Compensation Act providing for a
reduction of benefits when a claimant reaches the age of 65.
The Workmen's Compensation Appeal Board declined to con-
sider the constitutionality of the provision. The Court of Ap-
peals, Danhof, P. J., and Bronson and Boyle, JJ., affirmed,
finding the provision to be constitutional (Docket No. 16679).
Plaintiff's administratrix, successor, appeals.

The Supreme Court, in three separate opinions, held that the
provision for reduced benefits is constitutional, and affirmed the
Court of Appeals.

Justice Coleman, with Justice Fitzgerald concurring, would
hold:

1. One challenging the constitutionality of a statute assumes
the burden of overcoming the presumption of constitutionality;
in this case the plaintiff must show that the classification on
the basis of age does not rest on any rational basis.

2. Workmen's compensation is paid for an employee's loss of
wage-earning capacity because of a work-related injury. It is
not unreasonable to assume that the Legislature found that,

REFERENCES FOR POINTS IN HEADNOTES

[1, 5–7, 10–19, 21, 22] 60 Am Jur 2d, Pensions and Retirement Funds
§§ 56, 82.

82 Am Jur 2d, Workmen's Compensation §§ 17, 382–384.

Right to compensation under Workmen's Compensation Act as
affected by pension, insurance, gratuities, or other benefits not
derived from the act itself. 119 ALR 920.

[2] 16 Am Jur 2d, Constitutional Law § 172.

[3, 4] 16 Am Jur 2d, Constitutional Law § 297.

[8] 16 Am Jur 2d, Constitutional Law § 3.

[9] 82 Am Jur 2d, Workmen's Compensation § 367.

[20] 16 Am Jur 2d, Constitutional Law §§ 494, 495.

upon his attaining the age of 65, a worker's level of wage-earning capacity often decreased as a result of retirement, reduction in work, or for other reasons, and reflected this in a decrease of benefits for claimants over the age of 65.

3. The fact alone that a statutory classification may result in some inequality does not offend the equal. protection clauses; the application of comprehensive legislation will inevitably fall unjustly in some individual cases. A classification of employees on the basis of age cuts across racial, religious, and economic lines and generally bears some relation to mental and physical capacity; thus, age is less likely to be an invidious distinction and it cannot be said that age limits upon eligibility for employment are inherently suspect.

4. Age limits are necessary for the practicality of many statutes. The statute provides the same rule for all workers who have been injured either before or after their 65th birthdays. In either event the worker would receive either full pay or full benefits until age 65 or until injury. The age at which a classification of workers should be made is a matter for the Legislature or contracting parties as the case may be and not for the Supreme Court.

5. It is not an unconstitutional deprivation of equal protection of the law to provide by statute that workmen's compensation benefits be reduced after a worker attains the age of 65.

6. The argument that the provision of the statute for benefit reduction after age 65 applies to those entitled to benefits before that age and not to those who become entitled to benefits after age 65 is contrary to the plain meaning of the statute.

Justice Levin, with whom the Chief Justice concurred, agreed with Justice Williams that the challenged classification cannot be sustained on the premise that employed persons over the age of 65 earn less than younger persons doing like work but would hold that the constitutionality of the scale-down of benefits should be sustained on the ground that it is rationally related to the scale-down in earning capacity because of normal retirement. The older employed, as distinguished from job seekers, are generally compensated at the same rates as, or even higher rates than, younger persons doing the same work. The equal protection clause, however, does not require precision in classification. Compensation benefits are geared to weekly loss in wages. It is not unreasonable to calculate into the benefit program the likelihood that a disabled worker would retire between the ages of 60 and 75 even if not disabled

and for that reason no longer earn wages. Therefore, the challenged classification does not violate the equal protection clause.

Justice Williams would hold the provision unconstitutional prospectively. He wrote that:

1. The substantial-relation-to-the-object test should be applied to a constitutional challenge to a statute on the grounds that it violates equal protection of the laws where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental; the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation. The statute challenged here cannot fairly be labeled "experimental" after ten years; the plaintiff has the burden of demonstrating that the classification is not a reasonable one or that it does not bear a fair and substantial relation to the object of the legislation.

2. The plaintiff was 66 years old when he was forced to leave work by his disability, not by retirement from the labor force. The statute operates so that in the event of an identical disability befalling two workers performing identical jobs at identical salaries, the disability of a 68-year-old worker would be compensated at a lower rate than that of a 58-year-old worker, despite the demonstrated identity of their earning capacities. Therefore, the classification is overinclusive and violates the constitutional requirement of equal protection of the laws.

3. There were 96,992 persons 65 and over who were employed in Michigan in 1970. The classification is therefore more than a case of mathematical imprecision. The discrimination is significant and warrants judicial attention because a substantial number of qualified individuals are excluded by the statutory classification.

4. Worker's disability compensation deals with disability; Federal old age and survivors benefits do not. In no sense do the two benefits duplicate each other. The benefits are distributed for different reasons from different funds. The Worker's Disability Compensation Act does not address itself to nor deal with dual benefits. Therefore, the legislative purpose of avoiding dual benefits is not at all related to the statutory provision, and the statute violates the constitutional requirement of equal protection of the laws.

Affirmed.

53 Mich App 472; 220 NW2d 178 (1974) affirmed.

DECISION OF THE COURT

1. WORKMEN'S COMPENSATION—AGE—REDUCED BENEFITS—EQUAL PRO-
   TECTION—CONSTITUTIONAL LAW.

   The provision in the workmen's compensation statute for reduc-
   tion of benefits when a worker reaches the age of 65 is not
   unconstitutional as a denial of equal protection of the law
   (MCL 418.357; MSA 17.237[357]).

FOR AFFIRMANCE

COLEMAN and FITZGERALD, JJ.

2. CONSTITUTIONAL LAW—STATUTES—PRESUMPTIONS.

   *A statute comes clothed in a presumption of constitutionality and
   the Legislature does not intentionally pass an unconstitutional
   act; therefore, one challenging the constitutionality of a statute
   assumes the burden of overcoming the presumption.*

3. CONSTITUTIONAL LAW—EQUAL PROTECTION—POLICE LAWS—CLASSI-
   FICATION.

   *The equal protection clause admits of the exercise of a wide scope
   of discretion in the classification of police laws, and avoids what
   is done only when it is without any rational basis and, there-
   fore, purely arbitrary; any state of facts that can reasonably be
   conceived will be assumed in order to sustain a classification in
   police laws under the equal protection clause (US Const, Am
   XIV, § 1; Const 1963, art 1, § 2).*

4. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATION.

   *A classification in police laws having some rational basis does not
   offend the equal protection clause merely because it is not
   made with mathematical nicety, or because in practice it
   results in some inequality (US Const, Am XIV, § 1; Const 1963,
   art 1, § 2).*

5. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—AGE.

   *Workmen's compensation is paid for an employee's loss of wage-
   earning capacity because of a work-related injury; it is not
   unreasonable to assume that the Legislature found that, upon
   attaining the age of 65, a worker's level of wage-earning
   capacity often decreased, and that the Legislature considered
   the difficulty in anticipating individually the mental, emo-
   tional, and physical future as well as projected retirement and
   productivity of those 65 and over, and reflected this in compre-
   hensive legislation (MCL 418.357; MSA 17.237[357]).*

6. CONSTITUTIONAL LAW—STATUTES—EQUAL PROTECTION—CLASSIFICA-
   TION—AGE.

   *It cannot be said that the Federal and state legislatures were*

*totally arbitrary in choosing the ages of 65 and 60 as the respective ages at which statutory protection against age discrimination in employment ceases (29 USC 631; MCL 423.303a; MSA 17.458[3a]).*

7. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATION—AGE.

*A classification of employees on the basis of age cuts across racial, religious, and economic lines and generally bears some relation to mental and physical capacity; thus, age is less likely to be an invidious distinction and it cannot be said that age limits upon eligibility for employment are inherently suspect.*

8. CONSTITUTIONAL LAW—STATUTES—EQUAL PROTECTION—CLASSIFICATION.

*The fact alone that a statutory classification may result in some inequality does not offend the equal protection clauses; the application of comprehensive legislation will inevitably fall unjustly in some individual cases.*

9. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—CLASSIFICATION—CONSTITUTIONAL LAW.

*It is outside of the Supreme Court's constitutional role to change judicially the legislative objective to compensate for loss of wage-earning capacity and the legislative determination of a classification in which that capacity diminishes.*

10. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—AGE—REASONABLE BASIS.

*It is not an unconstitutional deprivation of equal protection of the law to provide by statute that workmen's compensation benefits be reduced after a worker attains the age of 65; it cannot be said that there is no rational basis to support a 5 percent reduction of workmen's compensation benefits for each year after the claimant's sixty-fifth birthday which will level off at age 75 and not fall below 50 percent of the benefits based on earnings at age 65 (MCL 418.357; MSA 17.237[357]).*

11. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—AGE.

*The Legislature intended that subsequent to July 1, 1968, all persons over the age of 65, no matter at what age they incurred injury, are subject to the reduced-benefit provision of that section of the Workmen's Compensation Act which provides that when an employee who is receiving weekly payments or is entitled to receive weekly payments reaches or has reached or passed the age of 65 his weekly benefit payments will be reduced (MCL 418.357; MSA 17.237[357]).*

For Reversal
Kavanagh, C. J., and Levin, J.

12. Workmen's Compensation—Benefits—Reduction—Age—Reasonable Basis.

*It is not an unconstitutional deprivation of equal protection of the law to provide that workmen's compensation benefits be reduced after a worker attains the age of 65; it cannot be said that there is no rational basis to support a 5 percent reduction of workmen's compensation benefits for each year after the claimant's sixty-fifth birthday which will level off at age 75 and not fall below 50 percent of the benefits based on earnings at age 65 (MCL 418.357; MSA 17.237[357]).*

13. Workmen's Compensation—Benefits—Reduction—Age—Reasonable Basis—Constitutional Law.

*The section of the Worker's Disability Compensation Act which provides for annual reductions of benefits when an employee reaches or has passed the age of 65 cannot be sustained as constitutional on the premise that employed persons over the age of 65 earn less than younger persons doing like work, but the section is constitutional on the ground that it is rationally related to the decrease in earning capacity due to normal retirement (US Const, Am XIV, § 1; Const 1963, art 1, § 2; MCL 418.357; MSA 17.237[357]).*

14. Constitutional Law—Equal Protection—Statutes.

*The equal protection clause does not require precision in statutory classification where rationality is the test (US Const, Am XIV, § 1; Const 1963, art 1, § 2).*

15. Workmen's Compensation—Benefits—Reduction—Age.

*Workmen's compensation benefits are geared to weekly loss in wages; it is not unreasonable to calculate into the statutory benefit program the likelihood that a disabled worker would retire between the ages of 60 and 75 even if not disabled and for that reason no longer earn wages (MCL 418.357; MSA 17.237[357]).*

16. Workmen's Compensation—Benefits—Reduction—Age.

*A challenge to the constitutionality of the reduction of workmen's compensation benefits beginning at the age of 65 cannot be sustained on the premises that a disabled worker is entitled to benefits for life and that a statutory classification based on age is constitutionally impermissible (US Const, Am XIV, § 1; Const 1963, art 1, § 2; MCL 418.357; MSA 17.237[357]).*

17. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES—CLASSIFI-
CATION.

*The drawing of lines that create distinctions is peculiarly a
legislative task and an unavoidable one; a classification affect-
ing the amount of benefits provided by social legislation does
not violate the equal protection clause simply because it is
unfamiliar and may appear to be or is less generous than the
common law (US Const, Am XIV, § 1; Const 1963, art 1, § 2).*

FOR REVERSAL

WILLIAMS, J.

18. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—AGE—CON-
STITUTIONAL LAW.

*The section of the Worker's Disability Compensation Act which
provides for annual reductions of benefits when an employee
reaches or has passed the age of 65 is unconstitutional as an
overinclusive classification because it covers a substantial group
of persons who have passed the age of 65 and have remained
employed and not suffered a reduction in earning capacity (US
Const, Am XIV; Const 1963, art 1, § 2; MCL 418.357; MSA
17.237[357]).*

19. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—AGE—CON-
STITUTIONAL LAW.

*The statutory scheme of the Worker's Disability Compensation
Act which provides for annual reductions of benefits once an
employee reaches or has passed the age of 65 is unconstitu-
tional because it has no relationship to the legislative object of
avoiding the payment of duplicate disability benefits (US Const,
Am XIV; Const 1963, art 1, § 2; MCL 418.357; MSA
17.237[357]).*

20. CONSTITUTIONAL LAW—STATUTES—EXCEPTIONS—RELATION-TO-OB-
JECT TEST.

*The substantial-relation-to-the-object test should be applied to a
constitutional challenge to a statute on the grounds that it
violates equal protection of the laws where the challenged
statute carves out a discrete exception to a general rule and the
statutory exception is no longer experimental; the classification
must be reasonable, not arbitrary, and must rest upon some
ground of difference having a fair and substantial relation to
the object of the legislation (US Const, Am XIV; Const 1963, art
1, § 2).*

21. WORKMEN'S COMPENSATION—BENEFITS—REDUCTION—AGE—CON-
STITUTIONAL LAW.

*A statutory classification of the Worker's Disability Compensation
Act which provides for reduced benefits for persons aged 65 or
over is a significant discrimination which warrants judicial
attention when challenged as unconstitutional where there
were more than 96,992 persons aged 65 and over who were
employed in Michigan in 1970 (US Const, Am XIV; Const 1963,
art 1, § 2; MCL 418.357; MSA 17.237[357]).*

22. WORKMEN'S COMPENSATION—BENEFITS—EARNINGS.

*The Legislature has chosen to base worker's disability compensa-
tion benefits for permanent and total disability on the earnings
of the injured worker; this renders it unnecessary to estimate
benefits based on the assumption, which may be erroneous that
workers will retire at the age of 65 (MCL 418.357; MSA
17.237[357]).*

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.*
(by *Douglas W. Johnson),* for plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy*
(by *Kenneth W. Kable)* for defendant.

COLEMAN, J. This is an appeal from a Court of
Appeals decision affirming the Workmen's Com-
pensation Appeal Board. Plaintiff challenges a
section of the Workmen's Compensation Act
(MCLA 418.357; MSA 17.237[357]), providing for
reduction in compensation payments to employees
over the age of 65, claiming that it denies him
equal protection of the law. We affirm the Court of
Appeals.

The facts are not in dispute. On October 17,
1968, plaintiff injured his foot while at work.
Although compensation for the foot injury was
voluntarily paid through December 1, 1968 and
plaintiff recovered from the foot injury, he did not
return to work because of a lung disease.

At a hearing on October 26, 1971, the referee

determined that the plaintiff had suffered a personal injury (silicotuberculosis) causally related to plaintiff's work at defendant's plant and, pursuant to MCLA 418.301; MSA 17.237(301), set the last day of work as October 17, 1968, the date of the foot injury,[1] when plaintiff was 66 years old.

In computing the weekly award, the referee applied § 357 of the Workmen's Compensation Act of 1969 (MCLA 418.357, *supra*) which read:[2]

"When an employee who is receiving weekly payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, so that on his seventy-fifth birthday the weekly payments shall have been reduced by 50%, after which there shall be no further reduction for the duration of the employee's life. In no case shall weekly payments be reduced below the minimum weekly benefit as provided in this act."

The plaintiff appealed to WCAB, claiming that § 357 was unconstitutional because it discriminated among employees on the basis of age, or

---

[1] Plaintiff was born March 18, 1902.

[2] The statute was amended by 1974 PA 184, § 1. The effective date of the amendment was July 2, 1974 and it reads:

"(1) When an employee who is receiving weekly payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, so that on his seventy-fifth birthday, the weekly payments shall have been reduced by 50%; after which there shall not be a further reduction for the duration of the employee's life. Weekly payments shall *not* be reduced below the minimum weekly benefit as provided in this act.

"(2) *Subsection (1) shall not apply to a person 65 years of age or over otherwise eligible and receiving weekly payments who is not eligible for benefits under the federal social security act, 42 USC sections 301–1396i."* (Emphasis added.)

that it was improperly applied to the plaintiff-appellant.

WCAB declined to consider the question of the constitutionality of § 357 leaving that question to the "higher tribunals". The appeal board did find that the plaintiff was subject to the age-65 reduction in the act. Finally, the appeal board corrected an error in the referee's computation. The computation modification is not in question on appeal to this Court.

The Court of Appeals found § 357 to be constitutional.

Plaintiff died in Mexico on January 7, 1973, prior to the February 23, 1973 opinion of WCAB. Although there had been no previous substitution of parties, the Court received a motion January 8, 1976 (amended January 21, 1976) and thereafter granted substitution of Marcellina Cruz, special administratrix of the estate of Victoriano Cruz.

ISSUES

I

Is it an unconstitutional deprivation of equal protection of the law[3] to provide by statute that workmen's compensation benefits be reduced after a worker attains the age of 65?

II

If MCLA 418.357; MSA 17.237(357) is valid, does it apply to this case?

[3] Const 1963, art 1, § 2:
"No person shall be denied equal protection of the laws". US Const, Am XIV, § 1:
"[N]or shall any state * * * deny to any person within its jurisdiction the equal protection of the laws."

ISSUE I

We long have held that a statute comes clothed in a presumption of constitutionality and that the Legislature does. not intentionally pass an unconstitutional act.[4] Therefore, one challenging the constitutionality of a statute assumes the burden of overcoming the presumption.

In *Lindsley v Natural Carbonic Gas Co,* 220 US 61, 78–79; 31 S Ct 337; 55 L Ed 369 (1911), the United States Supreme Court set forth and this Court subsequently has reiterated[5] the standards for treating equal protection questions:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and *avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety* or because in practice it results in some inequality. 3. When the classification in such a law is called in question, *if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.* 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." (Emphasis added.)[6]

---

[4] *See People v Bricker,* 389 Mich 524; 208 NW2d 172 (1973). *Also see Cady v Detroit,* 289 Mich 499; 286 NW 805 (1939), *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973), and *W A Foote Memorial Hospital, Inc v Jackson Hospital Authority,* 390 Mich 193; 211 NW2d 649 (1973).

[5] *See Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510; 104 NW2d 182 (1960).

[6] *See also, San Antonio School District v Rodriguez,* 411 US 1; 93 S

The United States Supreme Court reviewed a civil action by a former officer in the uniformed branch of the Massachusetts State Police. The Court examined a Massachusetts statute which mandates retirement for uniformed state police officers at age 50. The Court determined that strict scrutiny was not the proper test for determining whether the mandatory retirement provision denied appellee equal protection since the legislative classification did not impermissibly interfere with the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class. The Court found that the legislation did not violate the Equal Protection Clause and reiterated the rationality test of *Lindsley, supra:*[7]

"We turn then to examine this state classification under the rational-basis standard. This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. *Dandridge v Williams* [397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970)] *supra,* at 485. Such action by a legislature is presumed to be valid."[8]

In Michigan, workmen's compensation is paid for an employee's loss of wage-earning capacity because of a work-related injury.[9] It is not compa- .

Ct 1278; 36 L Ed 2d 16 (1973); *Village of Belle Terre v Boraas,* 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974).

Both *Rodriguez* and *Boraas* adopt the deferential stance of the *Lindsley* Court with respect to legislative action.

[7] *Massachusetts Board of Retirement v Murgia,* 427 US 307; 96 S Ct 2562; 49 L Ed 2d 520 (1976).

[8] *Ibid,* 314.

rable to an action in tort where a person may be compensated for pain and suffering, lack of consortium and other results growing from an injury. Affirming the WCAB, the Court of Appeals said in this case:[10]

"Viewed as compensation for wage loss, it is not unreasonable to assume that the Legislature found that, upon attaining the age of 65, a worker's level of compensation often decreased as a result of retirement, reduction in work, or other reasons. This assumption on the part of the Legislature has been reflected in § 357. Viewed in this respect a state of facts exists which would reasonably sustain the law and appellant has failed to carry the burden of showing that the law does not rest on *any* reasonable basis." (Footnote omitted.)

Given the standards of *Lindsley, supra,* and the presumption of the constitutionality of legislative enactments, the plaintiff must show that the classification does not rest upon any rational basis. Plaintiff's principal attack on the statute asserts that the legislation is unconstitutional because it discriminates against workmen on the basis of age.

While both the Federal government[11] and the State of Michigan[12] have passed laws protecting against age discrimination in employment, they have chosen the ages 65 (Federal) and 60[13] (Michigan) as the uppermost limits of protection. Although there is no small amount of controversy surrounding the choice of an age at which protec-

[9] *Sims v R D Brooks, Inc,* 389 Mich 91; 204 NW2d 139 (1973).

[10] 53 Mich App 472, 475–476; 220 NW2d 178 (1974).

[11] Age discrimination in employment act, 29 USC 621 *et seq.*

[12] Michigan State Fair Employment Practices Act, MCLA 423.301 *et seq.;* MSA 17.458(1) *et seq.*

[13] MCLA 423.303a; MSA 17.458(3a).

tion ceases,[14] it cannot be said that the lawmakers
were totally arbitrary in their actions. Thus, both
the state and Federal governments have made
distinctions between workers who are over 65 and
those under 65.

The leading case in the area of age discrimina-
tion is *Weiss v Walsh,* 324 F Supp 75 (SD NY,
1971); *aff'd mem,* 461 F2d 846 (CA 2, 1972); *cert
den* 409 US 1129; 93 S Ct 939; 35 L Ed 2d 262
(1973). Dr. Paul Weiss, a metaphysician of renown,
alleged that he was offered the Albert Schweitzer
Chair at Fordham University only to have the
offer withdrawn because of his advanced age (69).
It was alleged that the Department of Education
informed Fordham that a nominee of such ad-
vanced age would not be acceptable. Dr. Weiss
brought suit seeking a declaratory judgment, in-
junctive relief and $1,000,000 in damages. Dr.
Weiss alleged violations of the First Amendment
(right to speak as a teacher) and violations of the
Fifth and Fourteenth Amendments (equal protec-
tion). A motion to dismiss was brought by the
defendants and was granted in part. Dr. Weiss was
granted leave to amend on a breach of contract
issue raised at oral argument.

The district court in *Weiss* made it clear that
the decision was based upon the validity of the
classification by age, stating at p 77:

"Secondly, the absence of specific reference to age in

[14] *See* Kovarsky & Kovarsky: *Economic, Medical and Legal Aspects
of the Age Discrimination Laws in Employment,* 27 Vand L Rev 839
(1974); Note: *Mandatory Retirement—A Vehicle for Age Discrimina-
tion,* 51 Chicago Kent L Rev 116 (1974); Comment, *Age Discrimina-
tion and the Over-Sixty-Five Worker,* 3 Cumberland-Samford L Rev
333 (1972); Note: *Age Discrimination in Employment: The Problem of
the Worker Over Sixty-Five,* 5 Rutgers Camden L J 484 (1974); Note:
*Age Discrimination in Employment: Correcting a Constitutionally
Infirm Legislative Judgment,* 47 S Cal L Rev 1311 (1974).

the Fourteenth Amendment does not alone insulate age classifications from constitutional scrutiny any more than does the absence of mention of poverty or residency for example. *Harper v Virginia State Board of Education,* 383 US 663; 86 S Ct 1079; 16 L Ed 2d 169 (1966), *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1968). *But being a classification that cuts fully across racial, religious, and economic lines, and one that generally bears some relation to mental and physical capacity, age is less likely to be an invidious distinction.* * * * *Notwithstanding great advances in gerontology, the era when advanced age ceases to bear some reasonable statistical relationship to diminished capacity or longevity is still future.* It cannot be said, therefore, that age ceilings upon eligibility for employment are inherently suspect, although their application will inevitably fall injustly in the individual case. If the precision of the law is impugnable by the stricture of general applicability, vindication of the exceptional individual may have to attend the wise discretion of the administrator. On its face, therefore, the denial of a teaching position to a man approaching seventy years of age is not constitutionally infirm. The same result obtains under Article I, Section 11 of the New York Constitution." (Emphasis added.)

As the Federal district court of New York noted, the application of comprehensive legislation will "inevitably fall injustly in the individual case". Although a classification may result in some inequality, that fact alone does not offend the equal protection clauses. *Lindsley, supra.*

Age limits are necessary for practicality in many of our statutes. Many laws would be unmanageable if subjective assessments had to be made in each case. For instance, age limits for marriage, work permits for young people, various retirement systems, juvenile court jurisdiction, sale of alcoholic beverages and tobacco and licensing for various types of work are but a few examples of what

could be called "age discrimination" under plaintiff's theory.

The classification in which the statute placed Mr. Cruz included *all* workers who had been injured either before or after the sixty-fifth birthday and it provided the same rule for all.

It is true that a 65-year-old worker may be physically fit, although I doubt that anyone would claim all of the resilience of youth. One of that age may also be as sharp as (and maybe a little wiser than) a person 40 years of age. An individual income may be at an all-time high. These facts, however, do not prohibit a general age classification.

The argument that one injured prior to age 65 is better situated than one injured after that birthday is without merit. In either event, the worker would receive either full pay or full benefits until 65 or until injured. No matter what mortality table is used, the older we become, the fewer years of life (and therefore capacity for earning) we have left. We can take judicial notice of the fact that we are not immortal and that the bodily functions do change with age—in some, more rapidly than others.

We may even think that 65 is too young an age for general retirement and that instead of the trend to reduce the vesting age of various plans, the age should be raised to perhaps 70 so that more people could work the maximum time and also be less of a burden upon the young and the taxpayers. Such an argument foreseeably could be met with one directed towards even earlier mandatory retirement so that increased job opportunities would be available to the ever increasing populace and thereby diminish unemployment lines and public assistance. Albeit with less money to spend

(and less demands), the earlier retired worker would have more time to relax, engage in part-time work, start a new business or visit family and friends, etc. The arguments pro- and con-age limitations are many.

If we entered into that maze, we could immediately be confronted by a challenge to a converse general classification in the Workmen's Compensation Act which has to do with the compensation of those permanently injured before age 25. MCLA 418.359; MSA 17.237(359) permits computation by a hearing referee which takes into account age and experience when injured and what wages and position could be expected had the worker not been injured.

Plaintiff's knife cuts both ways.

We submit that these are matters for the Legislature or contracting parties as the case may be. It is certainly not for this Court to say at what age a general classification should be made or whether one should be made at all.

If the classification falls unfairly upon some individuals, that fact alone does not permit a finding of unconstitutionality. It could well be a matter for legislative consideration, but not for the personal convictions of the seven of us.

Importantly, the need for some orderly process, as opposed to a multitude of individual (and not necessarily fair) judgments of wage-earning capacities is apparent. If we had to project the wages to be anticipated in the future for each individual 65 and over before compensation benefits could be paid for injuries received, we would impose upon all concerned an incredible task and one quite different from projections for those under 25. The Legislature probably considered the difficulty in anticipating on an individual basis the mental,

emotional and physical future of those 65 and over as well as projected retirement, productivity and other less apparent concerns having to do with wage-earning capacity. The method employed is grounded in reason.

It is outside of our constitutional role to change judicially the legislative objective to compensate for loss of wage-earning capacity and the legislative determination of a classification in which that capacity diminishes.

### Dual Rights

It has not been argued by defendant that the reduction resulting from § 357 is because a worker usually is entitled to full social security benefits at age 65. Defendant astutely observes:

"Plaintiff-appellant has argued against an issue he himself has injected before this Court, but which is not the basis of the holding of the Court of Appeals in issue on appeal in the instant case."

Neither the WCAB nor the Court of Appeals based its decision on the avoidance of dual benefits argument. Defendant has not proposed such an argument. In this issue, it appears as a "straw man" set up by plaintiff to be destroyed by plaintiff.

Simply stated, dual rights is not an issue in this case.

### Conclusion

The Legislature has recognized diminishing earning capacity in the diminishing life expectancy of the older worker and has developed a 5% reduction formula for each year after the sixty-

fifth birthday, which will level off at age 75 and not fall below 50% of the benefits based on earnings at age 65. The formula may not precisely reflect the loss of anticipated earnings of each individual with mathematical nicety—but this is comprehensive legislation not unlike many other statutes in which age is a threshold factor.

When viewed in that context, it cannot be said that there is no rational basis to support § 357 of the Workmen's Compensation Act.


## ISSUE II

The plaintiff maintains that § 357 only applies when the employee was receiving or was entitled to receive compensation as of his sixty-fifth birthday.

The plaintiff cites a portion of § 357 which says that when an employee who is receiving weekly payments or is entitled to receive weekly payments *"reaches or has reached or passed the age of 65,* the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65 * * * ". (Emphasis added.)

The plaintiff argues that the section contemplates a 5% reduction each year after a claimant passes 65. Thus, if a person is first disabled when he reaches age 66, the statute does not apply to him. The statute only applies to those who are receiving benefits at age 65.

Plaintiff's technical argument does not coincide with the plain meaning of the language of the statute. If this interpretation were to prevail, the statute would indeed fall unfairly on those injured before age 65.

In *Welch v Westran Corp,* 45 Mich App 1, 4–5;

205 NW2d 828 (1973),[15] the Court of Appeals
clearly resolved the dilemma:

"MCLA 412.9(g), *supra,* as amended by 1968 PA 227,
§ 9(g), provided that 'when an employee who is receiv-
ing weekly payments or is entitled to weekly payments
reaches or has reached or passed the age of 65' weekly
payments were to be reduced in accordance with the
provisions of the section. Since the section as amended
provides that when the employee is either receiving or
entitled *to* receive payment and reaches or has reached
*or passed* age 65 his benefits will be reduced, it is clear
that the Legislature intended that subsequent to July 1,
1968, all persons over the age of 65 are subject to the
reduced-benefit provision, no matter when the injury
was incurred."[16] (Emphasis added.)

We agree with that opinion.

The plain meaning of the words and the logical
interpretation of the statute lead to the conclusion
that its provisions fall equally upon all regardless
of age at the time of injury.

Affirmed.

FITZGERALD, J., concurred with COLEMAN, J.

LEVIN, J. The Workmen's Compensation Act was
amended in 1965 to remove the 500-week limita-
tion on the duration of benefits for general disabil-
ity. At the same time the Legislature provided
that benefits for each year following the worker's
65th birthday are to be reduced by 5% until they

---

[15] Although this Court affirmed *Welch* (by an equally divided Court)
in 395 Mich 169; 235 NW2d 545 (1975), the reduction of benefits
argument was not pursued.

[16] The 1968 amendment became effective July 1, 1968 and the date
of plaintiff's injury was determined to be October 17, 1968. Therefore,
there is no retroactivity problem or need to interpret the prior
statute.

are reduced by 50% (on the 75th birthday) but not below the minimum weekly benefit.

The appeal board found that plaintiff Victoriano Cruz was disabled by occupational silicosis and silicotuberculosis.[1]

Plaintiff contends that the provision for reduction of benefits for workers over 65 is violative of the Equal Protection Clause.

Workmen's compensation benefits are in lieu of wages lost because of reduced earning capacity caused by industrial injury or disease. The disparate analyses in the opinions of the Justices appear to be attributable to different views of what constitutes earning capacity.

Justice COLEMAN, writing to uphold the constitutionality of the scale-down in benefits, states that older workers may have less physical and mental capacity than younger workers, their remaining useful years are fewer and, therefore, the scale-down has a rational basis.

We agree with her analysis insofar as it is based on the statistical likelihood that older persons will retire from the work force and no longer earn wages. However, even if older workers have less strength and agility than younger workers, this is not generally reflected in the current earning capacity of the employed.

We, therefore, agree with Justice WILLIAMS that the challenged classification cannot be sustained on the premise that employed persons over 65 earn less than younger persons doing like work. The older employed, as distinguished from job seekers, are generally compensated at the same rates as, or even higher rates than, younger persons doing the same work.

---

[1] The date of disablement was subsequent to the effective date of the 1965 amendment which in effect eliminated the aggregate dollar limitation on silicosis and dust disease benefits. *See* fn 4.

Justice Williams, writing to hold the scale-down unconstitutional, appears to require individualized determinations of whether and when a particular disabled worker would, but for his disability, have retired. The Equal Protection Clause does not, however, require precision in classification.

We would sustain the constitutionality of the scale-down of benefits on the ground that it is rationally related to the scale-down in earning capacity due to normal retirement.

While many workers continue to work past their 65th birthday, there is a significant drop in the number of persons employed after they become 65. Only 23% of males in this state between 65 and 69 are fully employed. The proportion drops to 12% for those between 70 and 74 and to 7% for those over 75.

It is therefore likely that a worker would retire from the work force between 60 and 75 even if not disabled and in consequence would no longer earn wages.

Compensation benefits are geared to weekly loss in wages. It is not unreasonable to factor into the benefit program the likelihood that a disabled worker would retire between 60 and 75 even if not disabled and for that reason no longer earn wages.

I

The challenge to the constitutionality of the scale-down of benefits appears to proceed on the unstated premises that a disabled worker is entitled to benefits for life and that classification based on age is impermissible.

Before the 1965 amendments, benefits for general disability were limited to 500 weeks[2] and the

---

[2] The original Workmen's Compensation Act, 1912 (1st Ex Sess) PA

aggregate amount payable for silicosis or dust disease was $10,500.[3] These limitations were removed[4] so that if the disability continues, benefits are payable for life.[5]

At the same time the act was amended to provide that when a worker who is receiving or is entitled to receive weekly payments "reaches" 65, the payments for each year following that birthday are reduced by 5% but not to less than 50% so that on the 75th birthday the weekly payments are reduced by 50% but not below the minimum

---

10, pt 2, § 9, provided that benefits were payable for total incapacity for a period no greater than 500 weeks.

1943 PA 245 enlarged the period for total and permanent disability to 750 weeks; 1953 PA 198 extended the duration of benefits for such disability to 800 weeks; 1956 PA 195 provided that benefits shall be paid for the duration of a total and permanent disability not greater than 500 weeks.

[3] 1951 PA 278.

[4] The amendment eliminating the 500-week limitation provides: "Compensation shall be paid for the duration of the disability." 1965 PA 44, part 2, § 9(a); MCLA 412.9; MSA 17.159.

The obligation to pay silicosis and other dust disease benefits in excess of $12,500 was imposed on the Silicosis and Dust Disease Fund. 1965 PA 44, pt 7, § 4; MCLA 417.4; MSA 17.223.

[5] Although some states have provided benefits for life (Arizona, Colorado, Illinois, Massachusetts, Minnesota, Nevada, Ohio, West Virginia), or for the duration of the disability (Alaska, Connecticut, Delaware, Florida, Hawaii, Kentucky, Michigan, New York, North Dakota, Oregon, Pennsylvania, Rhode Island, Virginia, Washington, Wisconsin), others have set a maximum time period, usually 400 to 500 weeks (Alabama, 550 weeks; Georgia, 400 weeks; Indiana, 500 weeks; Iowa, 500 weeks; Kansas, 415 weeks; Louisiana, 500 weeks; Mississippi, 450 weeks; Montana, 500 weeks, discretionary thereafter; New Jersey, 450 weeks; New Mexico, 500 weeks; North Carolina, 400 weeks, 500 weeks for two injuries in one employment, life for brain or spinal injuries; Oklahoma, 500 weeks; South Carolina, 500 weeks; South Dakota, 30 years; Texas, 401 weeks; Utah, 260 weeks; Vermont, 330 weeks), or have provided for a reduced scale of benefits after a given number of weeks (California, life, reduced after 400 weeks; Idaho, life, reduced after 400 weeks; Nebraska, duration of disability, reduced after 300 weeks; Tennessee, 500 weeks maximum, after 400 weeks reduced to $15 per week maximum). 4 Larson, The Law of Workmen's Compensation, app B, table 8, pp 524–527 (compiled as of 1973).

weekly benefit.[6] This limitation was extended to include a worker who "has reached or passed" the age of 65 when the disability occurred[7] and was carried forward in the 1969 codification of the workmen's compensation statutes,[8] subsequently renamed the Worker's Disability Compensation Act of 1969.[9]

In reducing benefits for workers over 65, the Legislature accorded disabled workers less than full payment for life. The duration of the employer's obligation to make payments was extended; the amount payable after normal retirement was scaled down.

The Legislature might merely have extended the period of benefit payment to a particular age, for example 65 or 70. Instead, it extended for the duration of the disability the period of payment with a reduced scale of benefits beginning at 65.

To be sure, if a worker is injured at 75 he receives only one-half the weekly benefit payable

[6] 1965 PA 44, pt 2, § 9(g); MCLA 412.9; MSA 17.159.

[7] 1968 PA 227.

[8] 1969 PA 317; MCLA 418.357; MSA 17.237(357).

The statute was further amended in 1974 to eliminate the scale-down if the worker is not eligible for Social Security benefits. 1974 PA 184.

This statutory provision as so amended reads:

"(1) When an employee who is receiving weekly payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, so that on his seventy-fifth birthday the weekly payments shall have been reduced by 50%; after which there shall not be a further reduction for the duration of the employee's life. Weekly payments shall not be reduced below the minimum weekly benefit as provided in this act.

"(2) Subsection (1) shall not apply to a person 65 years of age or over otherwise eligible and receiving weekly payments who is not eligible for benefits under the federal social security act, 42 U.S.C. sections 301-1396i." MCLA 418.357; MSA 17.237(357).

[9] 1975 PA 279.

to a worker injured at 50. However, a larger
amount of benefits may be paid on account of the
injury and disability of a worker who is 75 and has
a spouse and minor children, than is paid for the
same injury and disability of a 50-year-old worker
who has no dependents and shortly after the occu-
pational injury is killed in an automobile accident.

Five hundred weeks at 100% of the weekly
benefit may, in some cases, aggregate to more than
a scaled-down lifetime benefit. In other cases, life-
time payment of the scaled-down benefit will be
more beneficial. If the general enhancement in the
dollar amount of all benefits since 1965 is taken
into account, relatively few workers will be found
to have received less after the 1965 amendments
than was theretofore payable.

## II

The Worker's Disability Compensation Act is
replete with classifications and subclassifications,
many affecting the amount of compensation bene-
fits.

The amount of benefits payable in respect to a
particular injury or disease depends on a number
of variables, including:

—whether the injury or disease is the cause of
specific loss, general disability or death;

—the length of time the worker lives after in-
jury or disease and the cause of death;

—the number and age of the worker's depen-
dents and whether the worker is married or single
or male or female;

—the average weekly wage.

The amount of benefits payable for essentially
the same injury or disease is likely, therefore, to
vary greatly. If death results from the injury and

there are no dependents, the employer's sole obligation is to pay the reasonable expense of the worker's last sickness and burial.[10] If there are dependents, benefits are payable as long as they survive (or for a widow until she remarries) for not exceeding 500 weeks unless extended by the referee for dependents under the age of 21.[11]

The worker is now entitled to benefits as long as his disability continues; upon his death benefits cease.[12] If the occupational injury was the proximate cause of death, benefits are payable to dependents for the unused portion of the 500 weeks.[13]

If the disability is "total and permanent", benefits are payable for 800 weeks, even if, as where the loss is of both legs, the worker is not disabled from and continues to work.[14]

Dependents include not only a wife and a child but may include any member of the worker's family. Payments cease upon the remarriage of a dependent wife.[15]

If the worker is permanently and totally disabled before his 25th birthday, the referee may, in determining weekly benefits, consider whether "under natural conditions, his wages or position would be expected to increase".[16]

The statute now requires an adjustment in the maximum weekly rate to reflect any increase or decrease in the average weekly wages in covered employment.[17]

---

[10] MCLA 418.345; MSA 17.237(345).

[11] MCLA 418.321, 418.335, 418.341; MSA 17.237(321), 17.237(335), 17.237(341).

[12] MCLA 418.351, 418.375; MSA 17.237(351), 17.237(375).

[13] MCLA 418.375; MSA 17.237(375).

[14] MCLA 418.351, 418.361; MSA 17.237(351), 17.237(361).

[15] MCLA 418.331, 418.335, 418.353; MSA 17.237(331), 17.237(335), 17.237(353).

[16] MCLA 418.359; MSA 17.237(359).

[17] MCLA 418.355(3); MSA 17.237(355)(3). "The maximum weekly rate

Worker's compensation is social legislation. The benefit program incorporates some concepts developed at common law and by statute to provide a damage remedy for injury or death. In some of its features the program diverges from principles applied in assessing damages in ordinary civil litigation. The departures and innovations aid some workers and their families and disadvantage others. "[T]he drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Massachusetts Board of Retirement v Murgia,* 427 US 307, 314; 96 S Ct 2562, 2567; 49 L Ed 2d 520, 525 (1976). A classification affecting the amount of benefits is not unconstitutional simply because it is unfamiliar and may appear to be or is less generous than the common law or other statutes.

## III

Classifications based on age are commonplace. Criminal liability and civil responsibility may depend on the age of the actor or victim.

In *Massachusetts Board of Retirement v Murgia, supra,* the United States Supreme Court held that a statute requiring uniformed state policemen to retire at 50 without regard to whether the officer is capable of performing his duties does not violate the Equal Protection Clause.

The Court examined the classification under the rational basis standard[18] and concluded that

as so determined for the year in which the date of injury occurred shall remain fixed without further change as to the personal injury occurring within such year."

[18] The Court first determined that "strict scrutiny is not the proper test for determining whether the mandatory retirement provision denies appellee equal protection." It said:

"While the treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who

"[s]ince physical ability *generally* declines with age," requiring mandatory retirement at 50 "rationally furthers the purpose identified by the state" of removing from the service "those whose fitness for uniformed work *presumptively* has diminished with age". "That the State chooses not to determine fitness more precisely through individualized testing after age 50 is not to say that the objective of assuring physical fitness is not rationally furthered by a maximum age limitation. It is only to say that with regard to the interest of all concerned, the State perhaps has not chosen the best means to accomplish this purpose. But where rationality is the test, a State 'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' *Dandridge v Williams,* 397 US [471], 485; 90 S Ct 1153; 25 L Ed 2d 491 [1970]." *Massachusetts Board of Retirement v Murgia, supra,* pp 314–316. (Emphasis supplied.)

Many workers continue to work past their 65th birthday.[19] There is, however, a substantial drop in

have been discriminated against on the basis of race or national origin, have not experienced a 'history of purposeful unequal treatment' or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities. The class subject to the compulsory retirement feature of the Massachusetts statute consists of uniformed state police officers over the age of 50. It cannot be said to discriminate only against the elderly. Rather, it draws the line at a certain age in middle life. But even old age does not define a 'discrete and insular' group, *United States v Carolene Products Co,* 304 US 144, 152–153, n 4 [58 S Ct 778; 82 L Ed 1234] (1938), in need of 'extraordinary protection from majoritarian political processes.' Instead, it marks a stage that each of us will reach if we live out our normal span. Even if the statute could be said to impose a penalty upon a class defined as the aged, it would not impose a distinction sufficiently akin to those classifications that we have found suspect to call for strict judicial scrutiny." *Massachusetts Board of Retirement v Murgia,* 427 US 307, 313–314; 96 S Ct 2562, 2566–2567; 49 L Ed 2d 520, 524–525 (1976).

[19] Nationwide, in 1974, 22% of males and 8% of females over 65 were in the labor force. United States Bureau of the Census, *Social and Economic Characteristics of the Older Population* (Washington,

the percentage of persons working after 65. In Michigan in 1970, 76% of males between 55 and 59 worked 48 weeks or more a year. The percentage so employed was reduced to 58% for males between 60 and 64, to 23% for those 65 to 69, to 12% for those 70 to 74, and to 7% for those over 75.[20]

Whether this reduction in the work force is caused by mandatory retirement, physical disability, the incentives of the Social Security system or other pension programs or by a desire to experience the "good things" in life, the Legislature could rationally reflect in the benefit program the percept that sometime between 60 and 75 workers will, even if not disabled as the result of occupational injury or disease, "generally" cease to receive any substantial annual compensation for the current rendition of personal services.

Compensation benefits are geared to weekly wage loss.[21] It is consistent with the concept of

D.C.: United States Government Printing Office, 1974), p 24. Approximately 2.0 million males and 1.1 million females over 65 were employed in 1970; more than half were between 65 and 69. *Id.*

[20] United States Bureau of the Census, Social and Economic Statistics Administration, *Census of Population: 1970, Detailed Characteristics.—Michigan* (Washington, D.C.: United States Government Printing Office, 1972), table 167.

These statistics reflect retirements from the work force due to mandatory retirement.

While demographic statistics will reflect the results of unlawful discrimination, mandatory retirement at 65 does not appear to violate the public policy of this state or of the United States.

In enacting the age discrimination in employment act of 1967, Congress expressed its judgment that the prohibitions of that legislation should "be limited to individuals who are at least forty years of age but are less than sixty-five years of age". 29 USCA 631. The Michigan State Fair Employment Practices Act provides that it is an unfair employment practice to discriminate against any individual because he or she is between the ages of 18 and 60. MCLA 423.303a; MSA 17.458(3). Those legislative judgments, imposing no limitation on discriminatory tenure practices for persons over 60 or 65, are presumptively constitutional, and are not challenged in this litigation.

[21] MCLA 418.351, 418.371; MSA 17.237(351), 17.237(371).

tying weekly compensation benefits to weekly wage loss to factor into the benefit program the statistically established generalization that workers, even if not disabled, retire between 60 and 75 and no longer earn weekly wages. There is no discrimination against disabled workers over 65 in taking into account the wage loss they would "presumptively" suffer due to normal retirement.

Paraphrasing *Massachusetts Board of Retirement v Murgia, supra,* the Legislature might have chosen to determine "more precisely through individualized" factual determinations the age at which a disabled worker would, but for his injury, have retired. It is apparent that if the Legislature had adopted that course both the length and amount of benefits would be sharply reduced for many disabled workers and their families. The administrative convenience of the 5% per year scale-down compared to the cost and uncertainty of case-by-case determination justifies the legislative choice. "Perfection in making the necessary classifications is neither possible nor necessary." *Massachusetts Board of Retirement v Murgia, supra,* p 314.

## IV

Decision in this case does not require consideration of the 1974 amendment (see fn 8) eliminating the scale-down for those ineligible for Social Security benefits. It may, however, avoid misunderstanding to speak to the question since this amendment is adverted to in Justice Williams' opinion.

The special treatment of those who are ineligible for Social Security benefits does not create an entitlement in those who are eligible. There are many components that go into the makeup of the

weekly compensation payments which benefit one class of persons to a greater extent than another. Enhanced benefits are payable for the disability of a worker who has dependents, whose spouse does not remarry after the worker's death or who survives the injury or onset of disease for an especially long period of time.

Enlarging the benefits payable to disabled workers over 65 who do not receive Social Security benefits reflects their needs in much the same way as does the increase in benefits for those who have dependents, or whose spouses do not remarry, or who survive to old age.

KAVANAGH, C. J., concurred with LEVIN, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

WILLIAMS, J. *(for reversal).* We review today a challenge to the constitutionality of MCLA 418.357; MSA 17.237(357), that section of our state's Worker's Disability Compensation Act which provides for annual reductions of benefits once an employee reaches, has reached, or has passed the age of 65, on the theory apparently that persons of that age have left employment or suffered reduction in earning capacity. We hold that the classification is overinclusive as it covers a substantial group of individuals who have passed the age of 65 and have remained employed. Further, the statutory scheme has no relationship to the legislative object of avoiding the payment of duplicate disability benefits. Therefore, the statute is unconstitutional, and violates article 1, § 2, of the Michigan Constitution, and the Fourteenth Amendment to the United States Constitution, requiring that each person receive the equal pro-

tection of the laws. Because of our resolution, we do not find it necessary to determine the appropriate method of reduction of benefits for those disabled after the age of 65.

## I—FACTS

Plaintiff-appellant Victoriano Cruz was found to be permanently and totally disabled because of occupational silicosis and silicotuberculosis caused by 34 years of plant and foundry work.

The referee found plaintiff was disabled as of his last day of work, at which time Cruz was 66 years old.

Because of defendant's age, the referee ruled that benefits should be awarded subject to the reduction mandated by MCLA 418.357; MSA 17.237(357). At the time of the award, the statute provided:

"When an employee who is receiving weekly payments or is entitled to weekly payments reaches or has reached or passed the age of 65, the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65, so that on his seventy-fifth birthday the weekly payments shall have been reduced by 50%, after which there shall be no further reduction for the duration of the employee's life. In no case shall weekly payments be reduced below the minimum weekly benefit as provided in this act."

The Worker's Compensation Appeal Board corrected an erroneous computation, but otherwise affirmed the referee's decision. The award was thus $69 per week with a five per cent reduction for every year beyond 65 until plaintiff-appellant's 75th birthday was reached.

The Court of Appeals affirmed, rejecting plaintiff-appellant Cruz' contention that the act, by arbitrarily, unreasonably and capriciously discriminating against disabled workers solely on the basis of age, was unconstitutional class legislation in violation of the right to equal protection guaranteed by the Michigan and United States Constitutions. The Court held that, "Viewed as compensation for wage loss, it is not unreasonable to assume that the Legislature found that, upon attaining the age of 65, a worker's level of compensation often decreased as a result of retirement, reduction in work, or other reasons. This assumption on the part of the Legislature has been reflected in § 357. Viewed in this respect a state of facts exists which would reasonably sustain the law." Further, the Court held that the use of age to classify was reasonable, inasmuch as age on the date of injury was not controlling for determining the amount of benefits, but rather age was controlling "for determination of amount regardless of age on the date of injury". *Cruz v Chevrolet Grey Iron,* 53 Mich App 472, 475–476; 220 NW2d 178 (1974). We granted leave to appeal October 15, 1974. 392 Mich 808 (1974). Following plaintiff's death we permitted substitution of his wife, the administratrix of his estate, as the party plaintiff.

## II—THE STATUTE

In 1968, 1968 PA 227 amended 1965 PA 44. The statute then read:

"When an employee who is receiving weekly payments or is entitled to weekly payments reaches *or has reached or passed the age of 65,* the weekly payments for each year following his sixty-fifth birthday shall be reduced by 5% of the weekly payment paid or payable

at age 65, but not to less than 50% of the weekly benefit paid or payable at age 65; so that on his seventy-fifth birthday the weekly payments shall have been reduced by 50%; after which there shall be no further reduction for the duration of the employee's life." MCLA 412.9(g); MSA 17.159, now MCLA 418.357; MSA 17.237(357) (emphasis added to indicate amendment).[1]

In *Welch v Westran Corp,* 45 Mich App 1, 4; 205 NW2d 828 (1973), *aff'd on other grounds* 395 Mich 169; 235 NW2d 545 (1975), it was held that prior to the 1968 amendment the reduction did not apply to persons 65 years old before enactment of the section in 1965, or who were injured subsequent to their 65th birthdays. However, as a consequence of this amendment, the provisions applied to employees injured subsequent to their 65th birthdays.

In 1974, this became subsection (1), and a second subsection was added, which mandated:

"(2) Subsection (1) shall not apply to a person 65 years of age or over otherwise eligible and receiving weekly payments who is not eligible for benefits under the federal social security act, 42 U.S.C. sections 301–1396i." 1974 PA 184.

III—THE APPROPRIATE STANDARD OF REVIEW

The Court of Appeals held that plaintiff-appellant had "failed to carry the burden of showing that the law does not rest on *any* reasonable basis". 53 Mich App 472, 475–476 (emphasis by the Court). This is consistent with the standard of review used in *Naudzius v Lahr,* 253 Mich 216,

---

[1] The statute, as amended, reads in part: " * * * after which there shall not be a further reduction for the duration of the employee's life". 1974 PA 184.

223; 234 NW 581 (1931), quoting *Lindsley v Natural Carbonic Gas Co,* 220 US 61, 78; 31 S Ct 337; 55 L Ed 369(1911): "[I]f any state of facts reasonably can be conceived that would sustain [a law], the existence of that state of facts at the time the law was enacted must be assumed. * * * One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

However, this standard is no longer appropriate for viewing the challenged statute. We held in *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 671; 232 NW2d 636 (1975), that "where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied." This test, as used by the United States Supreme Court in *Reed v Reed,* 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971), requires that "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation * * *' ". As we observed in *Manistee,* the test is applied when the disputed legislation is no longer experimental.

"Where a classification scheme creates a discrete exception to a general rule and has been enforced for a sufficiently long period of time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound.

* * *

"Where * * * it can no longer be claimed that the legislation is experimental, where all possible rationales have been developed, a court should not dismiss a constitutional challenge on [the] hypothesis [perhaps

the legislature also had other reasons for the law]." 394 Mich 672.

*Cf., Gauthier v Campbell, Wyant & Cannon Foundry Co,* 360 Mich 510, 523–524; 104 NW2d 182 (1960) (although we applied the more deferential traditional test of *Naudzius* and *Lindsley,* we noted that statutes constitutional when passed could become unconstitutional in the future).

Operationally, the test means that,

"The yardstick for the acceptability of the means would be the purposes chosen by the legislatures,[2] not 'constitutional' interests drawn from the value perceptions of the Justices."

As a consequence, "[j]udicial tolerance of overinclusive and underinclusive classifications is notably reduced". Gunther, *Forward: In Search of*

---

[2] Thus, in *Massachusetts Board of Retirement v Murgia,* 427 US 307; 96 S Ct 2562; 49 L Ed 2d 520 (1976), where the United States Supreme Court upheld a Massachusetts law requiring police to retire at age 50, the Court rejected the district court's use of a strict scrutiny test of equal protection. (This test requires the presence of a fundamental right or a suspect classification to be applicable.) It then applied what it characterized as "a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task * * * . Perfection in making the necessary classifications is neither possible nor necessary". 427 US 314. However, even though the Court was using what was in effect the *Lindsley* test, it was careful to review only that "purpose identified by the state", and did not hypothesize or rely on conjecture. The stated legislative purpose was "to protect the public by assuring physical preparedness of its uniformed police". Analyzing this stated rationale, the Court specifically found, "There is no indication that [the statute] has the effect of excluding from service *so few officers who are in fact unqualified* as to render age 50 a criterion wholly unrelated to the objective of the statute." 427 US 315–316 (citations omitted) (emphasis added). Thus, the *Murgia* statute is different from the disputed statute in the case at bar, for while that statute excluded very few, the fact is that MCLA 418.357 excludes so many the classification is overinclusive. *See* discussion in text, *infra.* Applicability of the *Reed-Manistee* test was not raised in *Murgia.*

*Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv L Rev 1, 21, 20 (1972).

Our state's worker's compensation statute made its first appearance in 1912, and was most recently extensively revised in 1969. Various sections have been more heavily amended than others, but, as the pages of our Michigan Reports and our session laws indicate, this significant social and economic legislation has been subjected to extensive legislative and judicial review. Because of this extensive review, the possible justifications for various legislative approaches have been duly asserted and well canvassed. Although the particular amendment which is the subject of our litigation is of relatively recent vintage, it can only be fairly considered in relationship to the history of the complex body of legislation which makes up the worker's compensation act. In that sense, the ten years, more or less, of this amendment no longer leaves it in a purely experimental stage.

Further, in the instant case where the only issue litigated has been constitutionality of a disputed statute, the various arguments have been given free and full play. Thus, the label of "experimental" cannot be fairly applied, and the justification for not applying the "substantial relation" test, *i.e.,* that other rationales may develop, is inapplicable.

Therefore, we look to the test we applied in *Manistee* to determine whether plaintiff has sustained his burden of proof in challenging the statute, and has demonstrated either that the classification is not a reasonable one, and/or it does not bear a fair and substantial relation to the object of the legislation.

IV—Is the Classification Reasonable?

The appropriate test to determine whether this particular legislative enactment violates equal protection because subject individuals or entities are improperly classified was recently set forth in *Alexander v Detroit,* 392 Mich 30, 35; 219 NW2d 41 (1974) (citations omitted), cited with approval in *Manistee,* 394 Mich 670. The test is:

"Are the enactment's classifications based on natural distinguishing characteristics and do they bear a reasonable relationship to the object of the legislation?"

We find that the statute in the case at bar fails to satisfy these conditions and is an unconstitutionally overinclusive classification.

The Court of Appeals, in rejecting plaintiff's argument, held that the use of age in the statute to classify was reasonable. The Court maintained:

"Viewed as compensation for wage loss, it is not unreasonable to assume that the Legislature found that, upon attaining the age of 65, a worker's level of compensation often decreased as a result of retirement, reduction in work or other reasons." 53 Mich App 475.

The Court of Appeals claimed support for the validity of its assumption in *Letourneau v Davidson,* 218 Mich 334, 340; 188 NW 462 (1922), where we said, "We may take judicial notice that the earning power of a person performing manual labor is usually lessened when he reaches the age of 77 years".

The Court of Appeals reliance on *Letourneau* is, however, misplaced; the issue before our Court in that case was whether, based on a physician's report that plaintiff's disabilities were partly re-

lated to senility and partly the result of his work-related injury, compensation benefits could be reduced by that proportion of his disability which was not work-related. We held that the statute contemplated no such apportionment.

The statute still contemplates no such apportionment. The reduction required by MCLA 418.357 is not an attempt to allocate a certain portion of payments to compensate for work-related disability, while another portion is reserved for old-age related disability. Instead, the state tells us, it reflects the legislative assumption that workers over 65 will reduce their own incomes.[3]

The Court of Appeals approved the scheme because, the panel reasoned, benefits are paid on the basis of wage loss and after 65 most workers retire or suffer reduction in work.[4] However, this is incorrect for those who are working after the age of 65. They have a wage record that reflects they are not retired and the exact level of compensation whether reduced or increased. Thus, the Court of Appeals approach misstates the issue.

The bottom line is that, based on the state's own justification, the statute is deficient. The Legislature has included within the reduction requirement both those who left the labor force voluntarily before or at age 65 and those who were still working after the age of 65. Plaintiff in the instant case was himself 66 when he was forced to leave

[3] The Court of Appeals believed this might result from "retirement, reduction in work, or other reasons". 53 Mich App 475. The Worker's Compensation Appeal Board argued, in a similar case, "Can it be said that those 65 and over, whether injured or not, would not leave the labor market of their own volition through retirement some time [well] before a disability would run its course". *Walker v Lakey Foundry Corp,* 1970 WCABO 443, 444.

[4] They suggested the statute would be deficient if those injured before 65 would not be subject to benefit reduction, while those injured after 65 would be. We agree.

work by his disability, not by voluntary removal from the labor force. As plaintiff points out, the statute operates so that in the event of an identical disability befalling two workers performing identical jobs at identical salaries, the disability of the 68-year-old would be compensated at a lower rate than the 58-year-old, despite the demonstrated identity in earning capacities. If the justification for the reduction is retirement, if someone is still working after the age of 65, there is no reason why he or she shouldn't get the same benefits as anybody else.

Plaintiff advised this Court that there were 96,-992 persons 65 and over who were employed in Michigan in 1970.[5] The classification is therefore more than a case of mathematical imprecision. It is more than a case of lines drawn slightly askew. An entire wedge of the compensation pie has been improperly removed.[6] Based on numbers alone, the discrimination complained of is significant and warrants judicial attention.

Further, as we have seen, the state's own rationale does not justify the exclusion. The assumption on which the classification is based is factually and fatally overinclusive. It is as defective as those practices recently rejected which gave lesser credit to a wife's salary in mortgage applications because it was assumed she would leave the labor force to raise a family.[7]

---

[5] He cites Table 174, United States Bureau of the Census, *Census of Population: 1970, Detailed Characteristics; Final Report PC (1)—D24 Michigan* (Washington, DC: United States Government Printing Office, 1972), pp 899–901.

[6] This is a situation which the United States Supreme Court implied in *Murgia* it would find invalid, where a substantial number of qualified individuals are excluded by the statutory classification.

[7] Although we do not today rely on the due process analysis, we note that the presumption is in this way as unreasonable as the residency requirement struck down in *Vlandis v Kline,* 412 US 441, 452; 93 S Ct 2230; 37 L Ed 2d 63 (1973), where the state's permanent

The concept is also contrary to the basic nature of worker's compensation benefits. As Professor Larson observed in his learned treatise, the concept of worker's compensation mandates that the older worker's remaining years should not be treated less seriously than those of the younger worker's.

"If permanent disability or death benefits become payable, they are not limited to the period of what would have been claimant's active working life. In other words, if a man becomes totally permanently disabled at age twenty-five, and is awarded benefits for life, they obviously do not stop when he is sixty-five, but extend on into the period of what probably would have been retirement. This being so, *if a man is permanently and totally disabled at age sixty, it is not* correct *to say that his benefits should be based on the theory that his probable future loss of earnings was only five years of earnings.* The right to have compensation benefits continue into retirement years is built into the very idea of workmen's compensation as a self-sufficient social insurance mechanism from industrial accident and death." 2 Larson, Workmen's Compensation Law, § 60.21, pp 10-391–10-392. (Emphasis added.)

The Legislature has chosen to base compensation for permanent and total disability on the earnings of the injured individual. This renders unnecessary estimates based on erroneous assumptions of retirements which have not taken place.[8]

Because it is overinclusive, the statute must fail

and irrebuttable presumption of non-residency for purposes of tuition was struck down as "not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination".

[8] We might add that the Legislature has also, in effect, already allowed for decreased earning capacity, for those individuals whose compensation is based on what their earning abilities were, without contemplating any increases due to promotions, ordinary wage or salary increases, or inflation.

judicial review. For further guidance to the Legislature, however, we turn to a consideration of an additional rationale suggested for the statute. Consideration of this will determine whether such a reduction may be applied to those injured before they are 65 and have not demonstrated an intent to continue in the labor market beyond that age.

## V—THE STATUTE AS A MEANS OF REDUCING "DOUBLE BENEFITS"

The 1974 amendment to the statute, eliminating the reduction for those not eligible for Federal Old Age and Survivors benefits, suggests the only other rationale legislatively identified as supporting a mandatory reduction, that of eliminating so-called "double benefits". As the WCABO expressed in *Lakey,* "Consideration of * * * the various benefits many employees receive after retirement and age 65 [was] likely important to the legislative thinking in setting a reduction formula that still does recognize injury effect by granting compensation at least at the 50% level." 1970 WCABO 444.

This type of scheme has been judicially approved when dual benefits were genuinely involved. Thus, the United States Supreme Court approved, in *Richardson v Belcher,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231 (1971), 42 USC 424a(a), which provides a formula for reduction of Federal disability insurance benefits received by individuals also entitled to worker's compensation benefits.[9] The

---

[9] "Section 224 provides, in pertinent part:

" '(a) If for any month prior to the month in which an individual attains the age of 62—

" '(1) such individual is entitled to benefits under section 423 of this title, and

" '(2) such individual is entitled for such month, under a workmen's compensation law or plan of the United States or a State, to periodic benefits for a total or partial disability (whether or not permanent),

Supreme Court, citing legislative hearings, stated
that the act resulted from congressional response
to "criticism of the overlap between the workmen's
compensation and the social security disability
insurance programs". 404 US 82. Since both pro-
grams involved compensation for work-related dis-
ability, it is clear that the benefits are effectively
duplicative.

This is seen even more clearly in those state
statutes which attempted to avoid duplication of
state and Federal disability benefits. Thus, Mon-
tana carefully limits the offset to compensation
benefits for the *same* injury,[10] as does Minnesota.[11]

---

and the Secretary has, in a prior month, received notice of such
entitlement for such month,

" 'the total of his benefits under section 423 of this title for such
month and of any benefits under section 402 of this title for such
month based on his wages and self-employment income shall be
reduced (but not below zero) by the amount by which the sum of—

" '(3) such total of benefits under sections 423 and 402 of this title
for such month, and

" '(4) such periodic benefits payable (and actually paid) for such
month to individual under the workmen's compensation law or plan,
" 'exceeds the higher of—

" '(5) 80 percentum of his "average current earnings" * * *

" 'For the purposes of clause (5), an individual's average current
earnings means the larger of (A) the average monthly wage used for
purposes of computing his benefits under section 423 of this title, or
(B) one-sixtieth of the total of his wages and self-employment income
(computed without regard to the limitations specified in sections
409(a) and 411(b)(1) of this title) for the five consecutive calendar
years after 1950 for which such wages and self-employment income
were highest * * * .' 42 USC 424a." *Richardson v Belcher,* 404 US
78, 79 fn 1; 92 S Ct 254; 30 L Ed 2d 231 (1971).

[10] *E.g.,* "In cases where it is determined that periodic benefits
granted by the Social Security Act, 42 USC 301 (1935), *are payable
because of the injury,* the weekly benefits payable under this section
are reduced * * * ". Rev Codes of Montana 92-701.1 (Cum Supp,
1975) (emphasis added).

[11] *E.g.,* "the amount of the weekly compensation benefits being paid
by the employer shall be reduced by the amount of any disability
benefits being paid by any government disability benefit program *if
such disability benefits are occasioned by the same injury or injuries*
which give rise *to payments under this subdivision."* Minn Stat Ann
176.101(4). The Minnesota statute, however, also applied to old age
and survivor insurance benefits, presumably those converted from

The Colorado statute contains no such limitation, but clearly specifies reduction is warranted because of other *disability* benefits collected by the worker.[12]

It is clear, however, that insofar as the Michigan statute may have been designed to avoid duplication of benefits, it has not been appropriately drawn. It is apparent both from the age at which reductions begin, and from the 1974 amendment, that the Legislature was concerned about receipt of both Federal old age and survivors benefits and our state worker's compensation payments. The concern is misplaced, however, because these benefits are not duplicative.

Whereas Federal social security disability insurance and worker's compensation benefits are in a sense double payment because they both are designed to deal with disability, the Federal social security old age and survivors benefit is meant to supplement or, in some cases, substitute for private pension benefits, not disability benefits. Old age and survivor benefits are triggered by retirement because of age not because of injury.[13]

On the other hand, "Workmen's compensation laws generally provide compensation to employees

social security disability payments. *Cf. Telle v Northfield Iron Co,* 278 Minn 129; 153 NW2d 270 (1967).

[12] "In cases where it is determined that *periodic disability benefits,* granted by the federal old-age, survivors, and disability insurance act are payable to an individual and his dependents, the aggregate-weekly benefits payable * * * pursuant to this section shall be reduced * * * ". Colo Rev Stat Ann 8-51-101(1)(c).

[13] "The purpose of the federal old age benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen who have ceased to labor." *Social Security Board v Nierotko,* 327 US 358, 364; 66 S Ct 637; 90 L Ed 718 (1946). *(See* discussion, *Helvering v Davis,* 301 US 619, 642–644; 57 S Ct 904; 81 L Ed 1307 (1937), where the emphasis is on finding means of supporting workers over 65, involuntarily "thrown out of work".)

for loss resulting from industrial accidents and disease growing out of or resulting from their employment. The need for such a system arose out of conditions produced by modern industrial development and was premised upon the idea that the common-law rule of liability for personal injuries incident to the operation of industrial enterprises, which was based upon the negligence of the employer, with its defenses of contributory negligence, fellow servant's negligence, and assumption of risk, was outmoded by modern conditions". *Belcher v Richardson,* 317 F Supp 1294, 1296 (SD W Va 1970), *rev'd on other grounds,* 404 US 78; 92 S Ct 254; 30 L Ed 2d 231 (1971).

"Workmen's compensation * * * develop[ed] in response to a social policy decision to substitute for tort law principles a no-fault liability based on the employment relationship." *Pelkey v Elsea Realty & Investment Co,* 394 Mich 485, 501; 232 NW2d 154 (1975) (WILLIAMS, J., dissenting).

Thus, the conditions of payment for worker's compensation benefits have a completely different nature from old age and survivor's benefits. The source of funds differs as well. Compare 42 USC 401 and MCLA 418.601 *et seq.;* MSA 17.237(601) *et seq.*

Therefore, worker's compensation deals with disability. Old age and survivor's benefits do not. Thus, in no sense do the two duplicate each other. Because old age and survivor's benefits and worker's compensation payments[14] are distributed for different reasons, from different funds, the legislative purpose of avoiding dual benefits is not at all

[14] Further, because individuals become eligible for Federal retirement at 62, 42 USC 402(a), the MCLA 418.357 produces the anomalous result of reducing the compensation benefits of those who are 65, while those collecting the same retirement benefits who are between 62 and 65 collect the full amount of worker's compensation payments.

related to the statutory provision,[15] because the statute does not address itself to, nor deal with, dual benefits.

In order for a statute to satisfy the provisions of the equal protection amendments of the Michigan and United States Constitutions, the classifications must be reasonable and the statutory scheme must have a fair and substantial relation to the object of the legislation. The classification, as we have already discussed, is impermissibly overbroad. As for the second requirement, the statutory provisions reviewed today have no relation at all to the legislative goal.

## VI—CONCLUSION

We hold today that MCLA 418.357 is unconstitutional as a violation of equal protection, both because of an overinclusive classification and because it is not reasonably related to the legislative object. Because of this opinion, it is unnecessary to consider plaintiff's related issue of when the reduction begins for individuals injured after the age of 65.

The Court of Appeals and the Worker's Compensation Appeal Board are reversed, and the matter is remanded to the Worker's Compensation Appeal Board for entry of an order not inconsistent with this opinion.

As to those individuals not involved in the instant case, the holding of unconstitutionality is to be prospective only, and will also apply to all cases filed on our date of decision, and to all cases pending on appeal which have raised and preserved the issue.

No costs; a public question.

---

[15] Further, by setting a statutory maximum of 2/3 of the actual wage, recipients of worker's compensation benefits are already collecting reduced payments.