IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2010 Session

## JOHN DOE, alias a Citizen and resident of Hamilton County, Tennessee, v. MARK GWYN, Director of the Tennessee Bureau of Investigation, et al.

Appeal from the Chancery Court for Hamilton County
No. 10-0320      Hon. W. Frank Brown, III., Chancellor

No. E2010-01234-COA-R3-CV - Filed April 8, 2011

This declaratory judgment action challenges the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act, Tenn. Code Ann. § 40-39-201 *et seq*, on the grounds that plaintiff should not be required to register because his criminal convictions occurred in other states prior to the passage of the Tennessee Act, as applied to him.  The Trial Judge declared that plaintiff was required to register under the Act, and plaintiff has appealed.  On appeal, we affirm the Chancellor's Judgment which requires plaintiff to register in accordance with the Act.

Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Jerry H. Summers, and Marya L. Schalk, Chattanooga,  Tennessee, for the appellant, John Doe.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Benjamin A. Whitehouse, Assistant Attorney General, Nashville, Tennessee, for the appellee, Mark Gwyn.

**OPINION**

Plaintiff Doe filed a complaint in the Chancery Court against the Tennessee Attorney General, Robert E. Cooper, Jr., the Tennessee Bureau of Investigation Director Mark Gwyn, Hamilton County Sheriff Jim Hammond, and Hamilton County Sheriff Detective Jimmy Clifton, alleging that Mr. Doe was convicted in January 1983 of crimes which may or may not qualify as predicate offenses under Tenn. Code Ann. § 40-39-201 *et seq.*, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 (hereinafter the "Registration Act").

In the spring of 2010 Doe received a letter from defendant Detective Jimmy Clift that directed him to register as a sex offender pursuant to the Registration Act. The letter stated that if Mr. Doe did not do so within forty-eight hours, he would be arrested. The Complaint alleges that the requirements of Tenn. Code Ann. § 40-39-201 *et seq.*, as applied to Mr. Doe, violate his rights under various provisions of the Tennessee Constitution including the allegation that the statute violates the prohibition of ex post facto laws under Article 1, § 11 of the Tennessee Constitution. The Complaint alleges that in the event information regarding his criminal convictions were released to the general public, the plaintiff would suffer injury to his reputation and livelihood. The Complaint asks that the Court issue an injunction against the defendants forbidding them from arresting Mr. Doe for violation of the Registration Act, and seeks a declaratory judgment that "plaintiff's constitutional rights under the Tennessee Constitution would be violated if the plaintiff was required to register with the Sex Offender Registry."

The Trial Court entered a temporary retraining order prohibiting the defendants from requiring Mr. Doe to register. Prior to the hearing, Doe submitted affidavits of his former attorneys, a judgment from an Ohio court sentencing an unnamed defendant to three to ten years of incarceration for the crime of "gross sexual imposition", a copy of Detective Clift's letter to Mr. Doe, TBI's instructions regarding registration and Mr. Doe's affidavit.

Subsequently, the Court dismissed Detective Clift and extended the temporary restraining order for fifteen days. On May 5, the Trial Court dismissed General Cooper from the case on the agreement of the parties.

A hearing was held on April 27, 2010 on defendants' motion to dismiss. The Chancellor filed an extensive memorandum opinion and order wherein he held that the Registration Act did not violate the Tennessee Constitution's prohibition of ex post facto laws, thus the registration requirements of the Act were not unconstitutional as applied to Mr. Doe. The order stated that Doe was, accordingly, required to register with the TBI pursuant

to the Act.

Doe has appealed to this Court, and the parties entered an agreed order that there would be a stay of the judgment while the matter was before this Court.

The issues presented for review are:

A.      Did the Trial Court lack subject matter jurisdiction to hear this matter?

B.      Did the Trial Court err in granting the defendants' motion to dismiss for failure to state a claim upon which relief can be granted based on the ground that Mr. Doe is required to register as a sex offender pursuant to the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004?

C.      Did the Trial Court err in granting the defendants' motion to dismiss for failure to state a claim upon which relief can be granted because requiring Mr. Doe to register under the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 would be constitutional as applied to him?

Essentially, the facts are not in dispute. Some of the facts are based on the allegations in the Complaint, and the affidavit of John Doe and the affidavit of Doe's former attorney. Mr. Doe has been and is a resident of Hamilton County, Tennessee since 1989. He is licensed by the State of Tennessee and is engaged in the practice of an unnamed profession. He was convicted in January 1983 in Ohio and Kentucky of criminal offenses which may or may not qualify as predicate offenses pursuant to Tenn. Code Ann. § 40-39-201 *et seq.*, the Registration Act. The conviction in Ohio was on four counts of "gross sexual imposition". Doe served approximately three years in custody in one state and ninety days in the other state and was released on two years probation, which ended in 1989. He moved to Hamilton County, Tennessee in 1989 where he established a professional occupation.

At the time he was convicted in the states of Ohio and Kentucky, neither state had sexual offender registration requirements, nor was there such a requirement in Tennessee. Since moving to Hamilton County, Doe has not been arrested or convicted of any sexual offense that requires registration under the Tennessee Registration Act. Doe received a letter from Detective Jimmy Clift which informed him he was required to register with the designated law enforcement agency, and he was directed to register by April 7, 2010, otherwise his failure to comply would result in his arrest.

Our standard of review as to the granting of a motion to dismiss for failure to state a claim upon which relief can be granted is set out in *Stein v. Davidson Hotel Co.,* 945 S.W.2d 714, 716 (Tenn. 1997), in which the Supreme Court explained:

> A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn.1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn.R.App.P. 13(d); *Owens v. Truckstops of America,* 915 S.W.2d 420, 424 (Tenn.1996); *Cook, supra.*

*Stein* at 716.

This suit involves a constitutional challenge to the Tennessee Sexual Offender and Violet Sexual Offender Registration, Verification and Tracking Act, Tenn. Code Ann. §§ 40-39-201 *et seq.* (2004).

The Court is asked to construe the statute and determine its validity under the Tennessee Constitution. The Supreme Court, in *Waters v. Farr*, 291 S.W.3d 873 (Tenn. 2009), set forth the standard of review to be employed in such cases:

> When called upon to construe a statute, we must first ascertain and then give full effect to the General Assembly's intent and purpose. *Waldschmidt v. Reassure Am. Life Ins. Co.,* 271 S.W.3d 173, 176 (Tenn.2008). Our chief concern is to carry out the legislature's intent without either broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn.2002) (quoting *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995)). Every word in a statute "is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature." *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn.2005) (quoting *Marsh v. Henderson,* 221 Tenn. 42, 424 S.W.2d 193, 196 (1968)). When the statutory language is clear and unambiguous, we apply its plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn.2004). When a statute is ambiguous, however,

we may reference the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline,* 263 S.W.3d [827] at 836 [Tenn. 2008]. We presume that the General Assembly was aware of its prior enactments and knew the state of the law at the time it passed the legislation. *Owens,* 908 S.W.2d at 926.

*Waters* at 881 - 882.

The Court in *Waters* then discussed the standard of review for constitutional interpretation:

Issues of constitutional interpretation are questions of law, which we review de novo without any presumption of correctness given to the legal conclusions of the courts below. *Colonial Pipeline,* 263 S.W.3d at 836. It is well-settled in Tennessee that "courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties." *State v. Taylor,* 70 S.W.3d 717, 720 (Tenn. 2002) (citing *Owens,* 908 S.W.2d at 926). Our charge is to uphold the constitutionality of a statute wherever possible. *State v. Pickett,* 211 S.W.3d 696, 700 (Tenn.2007). "In evaluating the constitutionality of a statute, we begin with the presumption that an act of the General Assembly is constitutional." *Id.* (quoting *Gallaher v. Elam,* 104 S.W.3d 455, 459 (Tenn.2003)); *see also Vogel v. Wells Fargo Guard Servs.,* 937 S.W.2d 856, 858 (Tenn.1996) ("A statute comes to a court 'clothed in a presumption of constitutionality [since] the Legislature does not intentionally pass an unconstitutional act.' " (quoting *Cruz v. Chevrolet Grey Iron, Div. of Gen. Motors Corp.,* 398 Mich. 117, 247 N.W.2d 764, 766 (1976)) (alteration in original)).

*Waters* at 882.

This appeal challenges the constitutionality of the Act as applied to the plaintiff, John Doe. The Federal Sixth Circuit, in *Cutshall v. Sundquist*, 193 F. 3d 466, 469 - 470 (6th Cir. (Tenn. 1999) *cert. denied* 529 U.S. 1053 (2000), provided the background of the sexual offender registration laws enacted by all of the states under the direction of the federal government. In 1994 Congress enacted, and the President signed into law, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071. Under this legislation, the Attorney General of the United States was required to establish guidelines for state programs requiring persons convicted of crimes against minors or crimes of sexual violence to register a current address with state law enforcement officials. *See* 42 U.S.C. § 14071(a)(1)(A). The federal law provided that the states were given three years from September 1, 1994 within which to comply with the

statute and enact a sexual offender registration scheme. *See* 42 U.S.C. § 14071(f)(1) (1994). Failure to implement a registration program would result in the loss of some federal funding. *See* 42 U.S.C. § 14071(f)(2)(A) (1994). [1]

In 1994, the Tennessee legislature adopted its own Sexual Offender Registration and Monitoring Act., Tenn. Code § 40-39-101 to 108 (repealed 2004), which required convicted sexual offenders to register with the Tennessee Bureau of Investigation. *Cutshall* at 470. The 1994 Tennessee law did not apply to anyone convicted of a sexual offense prior to January 1, 1995 who had been discharged from incarceration or supervision prior to that date. *State v. Gibson*, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000 at * 4 (Tenn. Ct. App. Dec. 9, 2004).

Effective August 1, 2004, the Sexual Offender Registration and Monitoring Act was repealed and was replaced with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004, Tenn. Code Ann. § 40-39-201 *et seq*.; *State v. Davenport*, No. M2005-01157-CCA-R3-CD, 2007 WL 1582659 at * 2, n. 1(Tenn. Crim. App. Sept. 17, 2007). The 2004 Registration Act is a comprehensive statute requiring persons convicted of certain sexual offenses to register with the TBI and to have their names, addresses and other information maintained in a central offender registry. Applicable provisions of the Act to this appeal are as follows: Tenn. Code Ann. § 40-39-203 (a)(1) provides that an offender must register or report within forty-eight hours of establishing certain contact with Tennessee. The contact with Tennessee that triggers the registration requirement is the establishment or changing a primary or secondary residence in Tennessee, establishment of a physical presence at a particular location in Tennessee, becoming employed or practicing a vocation in the state or becoming a student in this state. Tenn. Code Ann. § 40-39-203(a)(2) provides that regardless of an offender's date of conviction or discharge from supervision, an offender whose contact with this state is sufficient to satisfy the requirements of subdivision (a)(1) and who was an adult when the offense occurred is required to register or report in person as required by the Act. The definition of "offender" as both a "sexual offender" and a "violent sexual offender" is found at section 40-39-202(10). The definitions of a "sexual offender" and a "violent sexual offender" are provided at sections 40-39-202(19) and (27). A "sexual offender" means a person who has been convicted in this state of committing a sexual offense **or** has another qualifying conviction and a "violent sexual offender" is a person who has been convicted in this state of committing a violent sexual offense **or** has another qualifying conviction. The terms "sexual offense" and "violent sexual offense" are defined at sections 40-39-202(20) and (28) and

---

[1] There statutes are often referred to as Meagan's Laws.

reference specific crimes contained in the Tennessee Criminal Code. The term conviction is also defined and found at section 40-39-202(2) as follows:

> Conviction means a judgment entered by a Tennessee court upon a plea of guilty, a plea of nolo contendere, a finding of guilt by a jury or the court . . . . Conviction includes, but is not limited to, a conviction by a federal court or military tribunal, including a court-martial conducted by the armed forces of the United States, and a conviction, whether upon a plea of guilty, a plea of nolo contendere or a finding of guilt by a jury or the **court in any other state of the United States, other jurisdiction or other country**. **A conviction . . . . for an offense committed in another jurisdiction that would be classified as a sexual offense or a violent sexual offense if committed in this state shall be considered a conviction for the purposes of this part** . . . . (Emphasis added).

Tenn. Code Ann. § 40-39-203(j), was added to the Registration Act in 2007, which made the sexual offender registration requirements applicable to all sexual offenders and violent sexual offenders as defined in Tenn. Code Ann. § 40-39-202(10)(19)(20)(27)(28) regardless of when they were convicted of their crimes. Thus, pursuant to Tenn. Code Ann. § 40-39-203(a)(1), as Mr. Doe was convicted in another state of an offense, he would be required to register in Tennessee if his offense would have been classified as a sexual offense or a violent sexual offense if committed in Tennessee, regardless of the date of the conviction.

The first issue to consider is appellee's contention on appeal that the Trial Court was without subject matter jurisdiction. Appellant's response to this contention is that lack of subject matter jurisdiction was not raised at the trial level. However, pursuant to Tenn. R. Civ. P. 12. 08, the issue of subject matter jurisdiction can be raised at any stage of the proceeding, including at the appellate level. *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003).

Appellee maintains that the Registration Act provides, at Tenn. Code Ann. § 40-39-207(g), a procedure for those who are registered as sexual offenders to challenge their registration by applying to the TBI. Appellee maintains that if the registrant is not successful in the challenge before the TBI he can apply to the Chancery Court of Davidson County or the Chancery Court of his county of residence for relief. Accordingly, appellee contends that Mr. Doe was obligated to bring the issue of the constitutionality of the Act as applied to him to the TBI first and only to the Chancery Court if he did not get satisfaction from the TBI.

Appellee argues that as Mr. Doe failed to exhaust the administrative remedies available to him prior to filing suit for a declaratory judgment in Chancery Court the Trial Court did not have subject matter jurisdiction over the controversy. Appellee's reliance on section 40-39-207 of the Registration Act to support this argument is misplaced. That section sets out the procedure a registered sexual offender can take to petition TBI to have the registration requirements terminated as to the registrant ten years after release from incarceration or supervision on parole or probation. *See* Tenn. Code Ann. § 40-39-207(a). Tenn. Code Ann. § 40-39-207(g) provides that "[a]n offender whose request for termination of registration requirements is denied by a TBI official may petition the chancery court of Davidson County or the chancery court of the county where the offender resides . . . for review of the decision." For section 40-39-207 of the Registration Act to apply here, Mr. Doe would have to have been a registrant seeking to have his name removed from the registry due to the passage of time and lack of further convictions. This is not the case. Mr. Doe's filing of a suit for declaratory judgment was an appropriate avenue for him to pursue to determine the constitutionality of the Act and, thus to avoid registration as a sexual offender.

The Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29-14-103, provides the right to seek a declaratory judgment from a court as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

The Tennessee Supreme Court, in *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827(Tenn. 2008), discussed the Declaratory Judgment Act at length and in particular addressed such a suit brought against a state agency:

> "Declaratory judgments" are so named because they proclaim the rights of the litigants without ordering execution or performance. 26 C.J.S. *Declaratory Judgments* § 1 (2001). Their purpose is to settle important questions of law before the controversy has reached a more critical stage. [2]26 C.J.S. *Declaratory Judgments* §

---

[2] The Supreme Court noted that Tennessee actually allows for additional relief based upon a
(continued...)

-8-

3 (2001). The chief function is one of construction. *Hinchman v. City Water Co.,* 179 Tenn. 545, 167 S.W.2d 986, 992 (1943) (quoting *Newsum v. Interstate Realty Co.,* 152 Tenn. 302, 278 S.W. 56, 56-57 (1925)). While findings of fact are permitted in a declaratory judgment action, "the settlement of disputed facts at issue between the parties will ordinarily be relegated to the proper jurisdictional forums otherwise provided." *Id.*

In its present form, the Tennessee Declaratory Judgment Act grants courts of record the power to declare rights, status, and other legal relations. Tenn.Code Ann. § 29-14-102 (2000). The Act also conveys the power to construe or determine the validity of any written instrument, statute, ordinance, contract, or franchise, provided that the case is within the court's jurisdiction. Tenn.Code Ann. § 29-14-103 (2000). Of particular relevance to this case, the Act provides that **"[a]ny person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder."** *Id.*

*Colonial Pipeline* at 837 (emphasis added).

Thus, a declaratory judgment suit is appropriate, in that Doe is seeking a determination of how his rights and status are effected by the Registration Act and whether the Act is valid as applied to him, i. e. is the act, as applied to him, in violation of the ex post facto provisions of the Tennessee Constitution.

The Supreme Court, in *Colonia Pipeline*, explained that in a declaratory judgment action the plaintiff need not show a present injury but "an actual 'case' or 'controversy' is still required." *Id. (citing Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)). A bona fide disagreement must exist, and there must be a real interest in dispute. *Id.* (citing *Goetz v. Smith,* 152 Tenn. 451, 278 S.W. 417, 418 (1925). Here, the plaintiff is not seeking an advisory opinion from the Court based on hypothetical facts. Mr. Doe is faced with criminal prosecution if he refuses to register with TBI. Thus, he has a real interest in the Court's, determination of the constitutionality of the Registration Act as applied to him.

---

[2](...continued)
declaratory judgment. *See* Tenn. Code Ann. § 29-14-111 (2007).

The *Colonial Pipeline* Court then discussed the implications of filing a suit for declaratory judgment against a state agency and noted that in such disputes the plaintiff must generally exhaust the available administrative remedies before filing a suit for declaratory relief. *Id.* at 338. However, in this case there are no available administrative remedies available to Mr. Doe for a determination of whether the registration requirements violate his constitutional rights. The *Colonial Pipeline* case involved a tax issue but the Court found that the administrative remedies contained in the tax code did not preclude the plaintiff's suit for declaratory judgment because the controversy was not whether the plaintiff's property was incorrectly assessed but whether the applicable statutory provisions violated constitutional principles. The Court stated that while the defendants correctly asserted that taxpayers must exhaust administrative remedies to appeal a final decision of the board, the statutory provisions for administrative remedies was not a "barrier to a constitutional challenge to the facial validity of the statute." *Id.* at 840. Similarly, in this case, even if the Registration Act contained administrative remedies to an offender's challenge regarding the requirements to register, those remedies would not be a bar to Mr. Doe's constitutional challenge of the validity of the Act as applied to him. *See Doe v. Cooper*, M200900915COAR3CV, 2010 WL 2730583 at *9 (Tenn. Ct. App. July 9, 2010), appeal denied (Dec. 7, 2010)(stating that the plaintiff had standing to challenge the constitutionality of the classification and registration requirement of the 2004 Registration Act by a declaratory judgment suit filed in Chancery Court). We conclude that the appellee's contention that the Trial Court was without subject matter jurisdiction is without merit.

Appellant's first issue on appeal is that Mr. Doe is exempt from the registration requirement based on Tenn. Code Ann. § 40-39-203(a)(2), which requires that any person who is required to register as a sex offender in another state must register in Tennessee if the offender has sufficient contacts with the state.[3] Mr. Doe argues that it was the legislature's intent that the language in Tenn. Code Ann. § 40-39-203 (a)(2) would exempt sexual offenders from having to register if they came from other states where registration was not required. We do not agree with Doe's interpretation of the statute. However, we do not rule on the issue because Doe never raised the issue in the Trial Court. It is a well settled principle of law that issues not raised in the trial court cannot be raised for the first time on appeal. *Jordan v. Jordan,* No. W2002-00854-COA-R3-CV, 2003 WL 1092877 at *8 (Tenn. Ct. App. Feb. 19, 2003)(citing *Lovell v. Metro. Gov't*, 696 S.W.2d 2 (Tenn.1985); *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn.1983)).

---

[3] The contacts with the state as set out in Tenn. Code Ann. § 40-39-203(a)(1).

Mr. Doe claims that requiring him to register as a sexual offender for an offense he was convicted of by an Ohio court in 1983, when he was not required to register either in Ohio or Tennessee at the time he was released from supervision in 1989, is an unconstitutional application of the Tenn. Code Ann. § 40-39-201 *et seq.*, to him. He asserts that the application of the Act to his particular circumstances resulted in the violation of his due process rights and the right against ex post facto laws contained in the Tennessee Constitution. [4]

Doe framed his constitutional challenge of the Registration Act as an "as applied" challenge, as opposed to a facial challenge to the statute. The Supreme Court explained at length the distinction between facial challenges and "as applied" challenges to a statute's constitutionality in *Waters v. Farr*, 291 S.W.3d 873 (Tenn. 2009). A facial challenge is a claim that a statute is "invalid in all applications" and cannot be applied constitutionally to anyone. *Id* at 92 (citing *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). A facial challenge to a statute is the most difficult type of challenge to make as the "presumption of a statute's constitutionality applies with even greater force when a facial challenge is made.*"* Thus, plaintiff bears the burden of showing that "no set of circumstances exists under which the statute would be valid." *Id*. at 921 (citations omitted).

An "as applied" challenge presumes that the statute is generally valid. but the challenger claims that "specific applications of the statute are unconstitutional." Accordingly, the challenger is required to show only that the statute operates unconstitutionally when applied to his particular circumstances. *Id* at 923. Thus, the court is required to "consider the constitutionality of statutes on a case-by-case basis, and to analyze the facts of the particular case to determine whether the application of the challenged statute deprived the challenger of a constitutionally protected right." Upholding an "as applied" constitutional challenge of a statute obviates the need for addressing a facial challenge to the statute. *Id*. Appellant alleges that the Trial Court's finding that the Registration Act was constitutional and that Mr. Doe was required to register was error because the Trial Court approached the case as a facial constitutional challenge rather than an "as applied" challenge.

---

[4] Appellant notably did not frame his ex post facto challenge in the context of ex post facto clause of Article I, § 10, cl. 1, of the United States Constitution. He probably avoided a federal constitutional challenge because the United States Supreme Court upheld Alaska's sex offender registration act against a federal ex post facto challenge finding that the act was nonpunitive in intent and effect. *Smith v. Doe,* 538 U.S. 84, 91, 105-106 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003). Additionally, plaintiff apparently abandoned the due process challenge at the trial level as it was not addressed in the trial court's memorandum opinion and was not appealed.

-11-

After the Trial Court issued its memorandum opinion and order in this case, the Middle Section of this Court rendered an opinion regarding an "as applied" constitutional challenge to the Registration Act in *Doe v. Cooper*, 2010 WL 2730583. While somewhat factually different from the facts before this Court, *Doe v. Cooper* deals with the same legal issues under consideration here. Thus, the analytic framework set out by the Middle Section is instructive to the analysis to be employed here.

*Doe v. Cooper*, like this case, was a declaratory judgment action wherein the petitioner challenged as unconstitutional the retroactive application of the Registration Act. Petitioner was convicted of five counts of indecent exposure involving a minor in 2001 when the Sexual Offender Registration and Monitoring Act of 1994 was in effect. The 1994 Act did not classify indecent exposure as a "sexual offense" thus petitioner was not required to register. Three years after his convictions, the 2004 Registration Act, at issue here, became law. Under the 2004 Act, petitioner was required to register and he, along with all other sexual offenders whose victims were minors, was prohibited from working or residing within 1,000 feet of a school, child care facility, or public park. Petitioner registered with the sex offender registry when the 2004 Act became law, and was employed at a medical center that was within 1000 feet of a school. When his employer learned that he was a registered sexual offender who was prohibited from working in such close proximity to a school, he was terminated. He obtained employment with another firm, but voluntarily left that job upon learning that a public park was within 1000 feet of the place of his employment. *Doe v. Cooper* at *1 - 2. Petitioner brought his suit for declaratory judgment, asserting the Registration Act of 2004, as applied to him, was in violation of Article I, Section 11 of the Tennessee Constitution. He contended that the *ex post facto* application of the law is unconstitutional because it requires that he register as a sexual offender and he is prohibited from working or residing within 1,000 feet of a child care center, a school or a public park. *Id*. at * 2.

Here, as discussed above, Mr. Doe was not required to register by the State of Tennessee until 2007 when the Registration Act of 2004 was amended to provide that all sexual offenders and violent sexual offenders as defined by the act must register regardless of the date of conviction. Doe, like the petitioner in *Doe v. Cooper,* is challenging the ex post facto application of the Registration Act "as applied" to him.

The *Doe v. Cooper* Court looked at the constitutional prohibitions on ex post facto laws. Tennessee Constitution Article I, § 11 provides "[t]hat laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal,

are contrary to the principles of a free Government; wherefore no ex post facto law shall be made." The ex post facto prohibition contained in the United States Constitution, the Tennessee Constitution and the constitutions of other states apply to laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Kaylor v. Bradley,* 912 S.W.2d 728, 732 (Tenn. Ct. App. 1995) (quoting *California Dep't of Corrs. v. Morales,* 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)). The United States Supreme Court's definition of an ex post facto law includes laws which:

> [Make] that criminal which was not so at the time the action was performed, or which increases the punishment, or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage. *Kring v. Missouri,* 107 U.S. 221, 228-29, 2 S.Ct. 443, 27 L.Ed. 506 (1883). The Court later declared: "The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." *Dobbert v. Florida,* 432 U.S. 282, 299, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). However, in 1990 the Court reined in what it would consider an ex post facto law by eliminating the broad "detriment or disadvantage" category and returning to a more traditional definition of ex post facto by prohibiting laws which, "punish as a crime an act previously committed, which was innocent when done; ... make more burdensome the punishment for a crime, after its commission; [and] deprive one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood,* 497 U.S. 37, 52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

*Doe v. Cooper*, at * 5 (citing *State v. Gibson,* No. E2003-02102-CCA-R3-CD, 2004 WL 2827000 at *2 (Tenn. Crim. Ct. App. Dec. 9, 2004).

The Tennessee Supreme Court has established five broad categories of laws that violate the ex post facto clause of the Tennessee Constitution as follows:

> 1. A law which provides for the infliction of punishment upon a person for an act done which, when it was committed, was innocent.

> 2. A law which aggravates a crime or makes it greater than when it was committed.

> 3. A law that changes the punishment or inflicts a greater punishment than the law annexed to the crime when it was committed.

4. A law that changes the rules of evidence and receives (sic) less or different testimony than was required at the time of the commission of the offense in order to convict the offender.

5. Every law which, in relation to the offense or its consequences, alters the situation of a person to his disadvantage.

*Doe v. Cooper* at * 5 (citing *Miller v. State,* 584 S.W.2d 758, 761 (Tenn.1979). The Court in *Miller* also noted that the ex post facto clause of the Tennessee Constitution has a broader reach than its federal counterpart. *Id.*

The Court in *Doe v. Cooper* went on to explain that when a court is called upon to determine whether an ex post facto violation of the constitution exists, it is important to first determine whether the challenged statute deals with sentencing or, instead, the statute establishes a civil proceeding. When considering, in the context of sentencing, whether an ex post facto violation of the constitution exists, the important issue, under both the United States and Tennessee Constitutions, "is whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." The court makes this determination by "comparing the standard of punishment prescribed by each statute, rather than the punishment actually imposed." If the court determines that the statute provides for the same or a lesser punishment there is no violation of the ex post facto clause. *Doe v. Cooper* at * 5 (citing *State v. Pearson,* 858 S.W.2d [879] at 883 [Tenn. 1993]).

On the other hand, if the court finds the statute is not intended to affect sentencing, but rather establishes civil proceedings a different analysis is employed. *Doe v. Cooper* at *5 (citing *Smith v. Doe,* 538 U.S. 84, 93, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); *Strain v. Tennessee Bureau of Investigation,* No. M2007-01621-COA-R3-CV, 2009 WL 137210 at *6 (Tenn. Ct. App. Jan.20, 2009)). In that case, the courts have developed a two-part test, the "intent-effects test," that requires courts to first "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Doe v. Cooper* at *5 (citing *Smith,* 538 U.S. at 92) (quoting *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997))). The second part of the intent-effects tests examines the effects of the law and is accomplished by reviewing the factors set forth in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *Doe v. Cooper* at *6. The *Kennedy v. Mendoza* factors, which have been used by courts in the arena of sex offender registration and reporting requirements, include: (1) in its necessary operation, whether the regulatory scheme has been regarded in our history and traditions as a punishment; (2) whether the regulatory

scheme imposes an affirmative disability or restraint; (3) whether the scheme promotes the traditional aims of punishment; (4) whether the scheme has a rational connection to a non-punitive purpose; or (5) whether the scheme is excessive with respect to this non-punitive purpose. *Smith v. Doe,* 538 U.S. at 96.

This Court, in applying the intent-effects test, is first called upon to consider whether the Tennessee General Assembly intended to establish civil proceedings with the enactment of the 2004 Registration Act. The Tennessee Supreme Court, in *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010) answered this question, holding that the General Assembly clearly indicated its intent that the Registration Act was a remedial and regulatory measure rather than a punitive measure. *Id*. at 469. *See also Strain v. Tennessee Bureau of Investigation*, M2007-01621-COA-R3-CV, 2009 WL 137210 at * 6 (Tenn. Ct. App. Jan. 20, 2009)(Registration Act was part of a non-punitive regulatory framework and not punishment); *Livingston v. State*, M2009-01900-COA-R3-CV, 2010 WL 3928634 (Tenn. Ct. App. Oct. 6, 2010)(registry is part of non-punitive regulatory framework and is not punishment); *Doe v. Cooper* at * 7(purpose of Act was not to inflict retribution or additional punishment on those offenders but to protect the safety and general welfare of the people).

The holdings of the foregoing cases are consistent with the Tennessee General Assembly's declaration regarding its intentions in enacting the Registration Act. Tenn. Code Ann. § 40-39-201(b)(8) provides "[t]he general assembly also declares, however, that in making information about certain offenders available to the public, the general assembly does not intend that the information be used to inflict retribution or additional punishment on those offenders". Further as noted by the Court in *Doe v. Cooper* at * 6 - 7, evidence of the General Assembly's non-punitive intent can be found throughout section 201(b) of the Act:

> (1) ... Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment, and protection of the public from these offenders is of paramount public interest;
>
> (2) It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, to allow members of the public to adequately protect themselves and their children from these persons;
>
> (3) Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety;

(4) In balancing the sexual offender's and violent sexual offender's due process and other rights against the interests of public security, the general assembly finds that releasing information about offenders under the circumstances specified in this part will further the primary governmental interest of protecting vulnerable populations from potential harm;

(6) To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of offenders and for the public release of specified information regarding offenders. This policy of authorizing the release of necessary and relevant information about offenders to members of the general public is a means of assuring public protection and shall not be construed as punitive; ...

Tenn.Code Ann. § 40-39-201(b).

Accordingly, based on the holdings of *Ward, Strain, Doe v. Cooper and Livingston* and the clear declaration made by the General Assembly, the intent of the legislature in enacting the Act was to protect the safety and general welfare of the people of Tennessee and it's purpose is not to inflict additional punishment of the offenders who are required to register.

The General Assembly's intent in enacting the Registration Act was to establish a non-punitive regulatory framework to protect the safety and welfare of the citizens of this state, and we now are required to consider the second prong of the "intent-effects" test using the *Kennedy v. Mendoza* factors. Because of the "as applied" nature of Mr. Doe's constitutional challenge we are required to look at his specific circumstances if applicable.

The first factor is whether the Registration Act has been regarded as punishment in our history and tradition. As discussed above, the requirements of the Act have been held to be non-punitive by our Supreme Court in *Ward* as well as by the Court of Appeals in numerous cases. [5] Further, in reaching its conclusion that the Registration Act was non-punitive, our Supreme Court in *Ward* looked at how sexual offender registration acts had been viewed in other state and federal courts. The Court stated that, based on its review of cases from other states, the overwhelming majority of courts considering this issue have concluded that a sex offender registration requirement does not impose additional punishment on the offender. *Ward* at 470 - 471.

---

[5] *See Strain v. Tenn. Bureau of Investigation,* 2009 WL 137210; *Livingston v. State*, 2010 WL 3928634; *Doe v. Cooper*, 2010 WL 2730583; *State v. Gibson*, 2004 WL 2827000.

Based on the details provided in *Ward* regarding the first *Mendoza v. Kennedy* factor, we hold that courts have overwhelmingly viewed sexual offender registry statutes as non-punitive.

The next *Mendoza v. Kennedy* factor is whether the regulatory scheme imposes an affirmative disability or restraint on Mr. Doe. He has not offered any specific facts which demonstrate that the registry scheme would constitute affirmative disability or restraint on him. He has merely argued that registration would cause embarrassment and damage his standing in the community, which would seem to be a universal result of registration. Mr. Doe has failed to articulate how the registration requirements would uniquely impose disability or restraint on him, as he must to sustain an "as applied" challenge, his argument is without merit.

The third *Mendoza v. Kennedy* factor is whether the Registration Act promotes the traditional aims of punishment. In *Doe v. Cooper,* the Court stated that the traditional aims of punishment are retribution and deterrence. *Id*. at 10. In that case the Court of Appeals found, in the context of restrictions on living and working conditions, that the Act was not created for the purpose of retribution or to deter criminal conduct. *Id.* We agree with the findings of the Court in *Doe v. Cooper*, the Act was enacted to protect the welfare of the people of Tennessee and not to further punish the offenders who are required to register.

The next *Mendoza v. Kennedy* factor is whether the registry, as applied to Mr. Doe, bears a rational connection to a non-punitive purpose. We conclude that there is a clear and rational non-punitive interest in the State of Tennessee's desire to inform the public of Mr. Doe's history of sexual offenses. The registry's aim is to provide the public with information that already exists in public records so that members of the public may take whatever safeguards they deem appropriate. Mr. Doe has not pleaded any specific facts applicable only to him to show the Court that this non-punitive purpose cannot apply to him.

The last *Mendoza v. Kennedy* factor is whether the scheme is excessive with respect to its non-punitive purpose. The Supreme Court in *Ward* noted that the "overwhelming importance of protecting the public safety outweighs the discomfort or inconvenience imposed upon a sex offender by requiring compliance with the registration requirements." *Ward* at 417. Thus, the Court held that, in general, the registration requirement of the Act is not excessive with respect to its non-punitive purpose. Here, Mr. Doe has not stated any reasons why requiring him to register would be more excessive than for any of the other thousands of sexual offenders registered in Tennessee.

Based upon the foregoing, Mr. Doe has failed to show, based on the intent-effect test, that the Registration Act, as applied to him, is in violation of the ex post facto provisions of the Tennessee Constitution.

We affirm the Trial Court's Judgment granting defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

In our discretion, the cost of the appeal is assessed one-half to the appellant and one-half to the appellee.

_____
HERSCHEL PICKENS FRANKS, P.J.